### ROGERS and Another *v.* WEST and Another.

A question as to parties, not presented by the record, will not be noticed by this Court.

In an action for damages on breach of contract, our statute, it seems, authorizes interest to be given in addition to damages, where money has been vexatiously withheld.

Whether interest should be allowed in such case, is a question for the jury; and this Court will not interfere with their verdict, unless it clearly appear that they have abused their discretion.

Where carriers contracted to take a cargo of flour from *Madison, Indiana,* to

*New Orleans*, in a sound boat, carefully laden and managed, and deliver it to consignees, unless prevented by inevitable accident; and on delivery the shippers were to be bound for freight; but the boat soon after receiving the cargo, and before starting on the voyage, sank, and the cargo was damaged; whereupon the insurers of the shippers took possession of it, and paid the charges for rescuing it; and the shippers brought suit against the carriers for damages—

*Held*, 1. That the carriers had no right to a redelivery of the goods to enable them to earn freight; that they could not have recovered freight, even if they had kept possession of the cargo and delivered it in its damaged condition; nor could they recoup charges for freight in this action.

2. That they could not claim to carry the goods to their original destination, with a view to a reduction of damages for which they would be held liable to the shippers, unless they showed, at the time of demanding a redelivery, that they were suitably prepared to transport them.

3. That as the evidence in the case is not in the record, it will be presumed that the instruction of the Court below, that the shippers were not bound to redeliver, was correct; and that the evidence did not show that the carriers were prepared to transport the goods.

4 That if the goods, from the injuries received, and their perishing condition, could not safely be sent forward, the shippers were not·bound to redeliver them.

The measure of damages, in such case, is the diminution of the value of the goods, at the place where they were damaged, with the costs of rescuing them, in the nature of salvage.

APPEAL from the *Jefferson* Circuit Court.

PERKINS, J.—We take the statement of the case, and the points claimed to be presented for consideration, from the brief of appellant's counsel:

" *West* and *Torrence*, the defendants here, brought an action on the case, on the 5th day of *February*, 1853, for the use of the *Madison Insurance Company*, against the plaintiffs, in the *Jefferson* Circuit Court, upon a bill of lading executed by the plaintiffs in this Court, to *West* and *Torrence*, for the carriage and delivery of 4,018 barrels of flour to Messrs. *Taylor* and *Cassilly*, at *New Orleans*. The breaches of the contract assigned, were the non-delivery of the flour, and its injury and destruction, through the negligence of the carriers. The defendants pleaded the general issue, and a special plea as appears by the record. The special plea was demurred to, and the demurrer sustained, and afterwards an additional answer was filed, to which a demurrer was also sustained.

"There was a trial by jury, on the plea of the general issue. Verdict for the plaintiffs; motion by the defendants for a new trial overruled; and judgment for the plaintiffs. Appeal to this Court.

"The main points upon which we wish the opinion of the Court, and which we think are presented by the record, are as follows:

"1. Can the owners of the cargo, after having delivered it to the carrier on board his vessel, for the purpose of carriage, upon any breach of the contract of carriage being committed by the carrier, doing damage to the cargo, but whilst it yet remains in specie, and might, without total destruction or very great additional injury, be carried to the place for delivery, reclaim, and take, and hold the property from the carrier, against his consent, without paying or offering to pay the freight to the place of delivery?

"2. If the owners may and do so take their property from the possession of the carrier at the port of departure, against the consent of the carrier, is it not equal to a delivery of the cargo, at the place of delivery, in the same condition it is in when the owners so take it, subjecting the carrier to the payment of damages for the injury done by him to the property, and entitling him to the price of carriage?

"3. What is the measure of damages in an action against a carrier for an injury done to the goods, through his default, and whilst in his possession?

"4. Can the owners, after having parted with all their interest in the goods, maintain an action against the carrier, on the contract of carriage, for a breach of the contract committed before parting with their interest?

"5. Can the insurers, after abandonment and assignment to them by the owners, maintain an action in the name of the owners against the carrier, for a breach of the contract of carriage, committed before the assignment or abandonment; and if so, can they recover in such action more than an indemnity?

"6. Can they, in such action, recover interest, in addition to the damages sustained?"

The first three points manifestly involve the main questions in the cause; and as the remaining three can be briefly disposed of, we will notice them before entering upon the discussion of the former.

The issues in the case were made up and tried under the code of 1852; and the record, under the provisions of that code, presents no question as to parties.

This fact puts the fourth and fifth points out of the case. We will remark, however, as to the fifth, that we see no reason, if the owners please to assign their right of action against the carriers, supposing it to be assignable, to any one, for less than it is worth, why the circumstance should diminish the amount recoverable by the assignee, any more than would the like circumstance in the case of a promissory note, or any other chose in action.

As to the sixth point—the interest—our statute gives it in certain cases, and authorizes it to be given in perhaps any case, where it shall appear that money has been vexatiously withheld. In this latter class of cases, it is properly a jury question, and would require a clear abuse of discretion on their part, to justify the interference of the Court. 1 R. S. p. 343. In this case, the suit was kept pending about twenty months.

We may now proceed to examine the first three points above stated.

Counsel, in discussing them, have treated the case as one of insurance, but it is not. As presented by the record, it is simply a case between the shippers and the carriers of goods, and is to be determined by the nature and obligations of the contract between the parties in those characters.

The contract of the carriers was to take the goods—a cargo of flour, &c.—from *Madison*, in *Indiana*, to *New Orleans*, in *Louisiana*, by the *Ohio* and *Mississippi* rivers, in a sound boat, carefully laden and carefully managed; and deliver them to the consignees, unless prevented by inevitable accident. On such delivery, the shippers were bound to pay the carriers the stipulated sum as freight. The contract was not fulfilled. The boat, a barge, was

loaded at *Madison* in the evening, taken across the river and tied up, with a view to commencing the voyage the next day. Early the next morning the barge was found sinking, and did soon after sink. All of the flour, some 4,018 barrels, was wet, some more and some less. A part of it fell off into the river, but was recovered by the *Madison Insurance Company*, who had insured the shippers, and the water was got out of the barge, a part of the cargo having been removed to other boats. The flour and barge were taken across the river again to *Madison*. The cost of rescuing the flour was between 500 and 600 dollars, which was paid by the insurance company above named, who, on rescuing, took possession of the cargo, &c. The jury found the damages sustained to have been over 5,000 dollars; and that they happened through the negligence of the carriers.

The taking possession of the cargo by those interested in it, was a matter of necessity to its preservation to any extent. The property was of a very perishable nature, when placed in the element to which the carelessness of the carriers had consigned it. The taking possession was occasioned by a breach of contract—by a failure on the part of the carriers to fulfill its obligation; and why should the property be returned to them? They not having complied with their part of the contract, how could they recover at all for freight upon that contract? What concern can it be of theirs, as to the freight, whether the goods, in their damaged condition, be transported to *New Orleans* or not? Suppose they had raised the boat and taken the cargo to that city, and then sued for freight; could not the shippers have defended on the ground that the carriers had not fulfilled their part of the agreement, in carefully managing the boat, &c.? If, then, they could not, under the circumstances, have recovered freight, had they kept possession of the goods and taken them to their destination, how are they injured in not having the goods to transport? It would seem that they were rather relieved of an expensive task. And if, in a suit for freight, they could not

have recovered it, neither can they recoup it when sued, as in this case, for damages.

We may pursue the argument a little further. A carrier agrees to deliver the cargo intrusted to him at the place of destination, unless prevented by inevitable accident. If he fails to deliver it, no such cause preventing, he earns no freight. *McGregor* v. *Johnson*, 2 Ind. R. 70.— *Holliday* v. *Coe*, 3 *id.* 26. He does not agree that the cargo shall be in a good condition when delivered, but he agrees that it shall not be in a bad one on account of his negligence. Now, if it be delivered in such condition, owing to such negligence, can there be any recovery of freight? Is not this breach of contract equally fatal to such recovery, as the failure to deliver at all? If the cargo is not delivered, or is injured, through inevitable accident, then questions arise as to any freight, or *pro rata* freight, and the right of shippers to take possession upon paying freight, or not, &c.—questions there seems to us to be no necessity for entering upon the discussion of here.

But, though the carriers had no interest in again getting possession of the goods to enable them to earn freight, could they claim to carry them to their original destination, with a view to a reduction of damages for which they would be liable to the shippers? Could they say the damaged goods would sell enough higher at that point than they would where they then were, to make it an object to ship them thither? We are not prepared to say that after violating their first agreement, whereby the shippers had been greatly damaged, they could, for their own benefit, demand that those shippers should again trust what remained of their property to them, in exchange for their personal responsibility; nor do we decide the contrary. The shippers would not, at all events, be bound to surrender the goods to them, unless when demanded the carriers showed that they were suitably prepared to transport them. This is the rule, even where the voyage is interrupted by inevitable accident, without the fault of the carrier. Much more, then, should it be so, where it is

Nov. Term, 1857.

ROGERS
v.
WEST.

Nov. Term, 1857.

ROGERS
v.
WEST.

interrupted through his negligence. Pars. Merc. Law, p. 350.—2 Am. Lead. Cas. 589, *et seq.*

Now, in this case, the record does not purport to contain all the evidence; and unless the evidence did show that the preparation of which we have spoken existed, the instruction of the Court below, that the shippers were not bound to redeliver, would be right, at all events as applicable to the evidence; and we must indulge every presumption in favor of the instruction.

So, if the goods, from the injuries received, and their perishing condition, could not safely be sent forward, the shippers were not bound to redeliver them.

The damages, then, were rightly determined in this case by estimating the diminution in value of the goods at the place where they then were, with costs of recovering them from the river, &c., in the nature of salvage, whereby additional damage to them was prevented.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*J. G. Marshall* and *C. E. Walker*, for the appellants (1).

*J. Sullivan*, *J. W. Chapman*, and *J. B. Merriwether*, for the appellees (2).

(1) Counsel for the appellants cited authority to the following point:

We think there can be no doubt of this, that when the owner of the goods takes possession of them short of the port of delivery, it is equivalent to a delivery. If they are taken with the carrier's consent, then freight for the whole voyage is to be paid, if the goods still exist and might be carried to the port of delivery, and this even if they would not be worth the freight on arrival there. See Angell on Carriers, ss. 332, 338, inclusive. The carrier has a right to the goods under the contract of carriage, as long as they exist in specie for the purpose of carriage, and thus earning his freight; and this right can only be defeated by payment, or offer of payment, of full freight. *Hugg et al.* v. *The Augusta Insurance and Banking Company*, 7 How. U. S. 595; *Griswold* v. *The New York Insurance Company*, 3 Johns. 321; *Jordan* v. *The Warren Insurance Company*, 1 Story's C. C. R. 342. The case of *Bowman* v. *Teall*, 23 Wend. 306, is not in point in this case.

(2) Counsel for the appellees made the following points:

1. A contract for the conveyance of merchandize is, in its nature, an entire contract; and unless the contract be performed by the delivery of the goods at the port of destination, the carrier will, in general, derive no benefit from it— in other words, he will earn no freight. There are exceptions to the general rule, but they are applicable only under particular circumstances. *Crozier* v.

*Smith*, 1 Scott, N. R. 338.—*Halwerson* v. *Cole*, 1 Speers, 321.—*The Ship Nathaniel Hooper*, 3 Sumner, 549, 550.—*Saltus* v. *Ocean Insurance Company*, 14 Johns. 138.—*Griswold* v. *New York Insurance Company*, 3 Johns. 321.—3 Kent (5th ed.) 219.—*Caze* v. *Baltimore Insurance Company*, 7 Cranch, 358.—*Holliday* v. *Coe*, 3 Ind. R. 26. In the case of the ship *Nathaniel Hooper*, *supra*, Judge STORY says: "The whole of the cases in which the full freight is, on the ordinary principles of commercial law, due, notwithstanding the non-arrival of the goods at the port of destination, may be reduced to the single statement that the non-arrival has been occasioned by no default or inability of the carrier-ship, but has been occasioned by the default or waiver of the shipper." See, also, *Hadfield* v. *Jameson*, 2 Munf. 53. The goods must not only arrive at the port of destination to entitle the carrier to freight, but there must be a delivery of them, (*Lane* v. *Penniman*, 4 Mass. R. 91,) unless the delivery be prevented by the default or neglect of the owner. 11 Mass. R. 229.—16 Johns. 346.

2. The carrier is sometimes allowed freight *pro rata itineris*, notwithstanding the non-delivery of the goods at the port of destination. The question of *pro rata* freight does not necessarily arise in this case, for the reason that the voyage was not commenced, as the plaintiffs in error admit. They claim the whole freight, however, on the ground that they were ready to perform, &c. But, for the purpose of strengthening the view we have above taken of the law governing contracts of affreightment, we will say that freight *pro rata itineris* is never allowed, unless it be on some new contract, express or implied, between the shipper and the carrier. *Marine Insurance Company* v. *United Insurance Company*, 9 Johns. 186.—*Welch* v. *Hicks*, 6 Cow. 504.—7 *id.* 564.— Abbot on Ship. marg. p. 448, 449, 450. And the right to freight does not commence in any case until the ship has broken ground and commenced the voyage. No partial payment can be claimed for goods laden on board, if, even without the fault of the master, the ship is prevented from actually setting forth on the voyage. *Curling* v. *Long*, 1 Bos. & Pull. 634. Much more, we would say, if, by his fault, the ship was disabled. When the carrier sues for freight, or, what is the same thing, when he sues on a policy for the insurance of the freight, he must of course show that if he has not delivered the cargo, he did all in his power to deliver it, and that the non-delivery is not attributable to any fault or neglect of his own. Upon that principle, the case of *Griswold* v. *New York Insurance Company*, 3 Johns. 321, was decided. That was a suit between the carriers and the underwriters of the freight bill. The carriers, after the freight was on board and the ship had broken ground, were the agents for the underwriters, and were required to show that they acted in all respects for the interests of the underwriters, before they could call upon the latter for an indemnity. The case of *Hugg et al.* v. *The Augusta Insurance and Banking Company*, 7 How. U. S., is also on a policy on freight. In such a case the underwriter contracts that the goods, whether damaged or not, shall arrive at the port of delivery.