IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1879, IN THE
SIXTY-THIRD YEAR OF THE STATE.

---

### FRAZER, EXECUTOR, v. BOSS.

DECEDENTS' ESTATES.— *Claim.*— *Amendment.*— *Additional Paragraph.*— *Waiver.*—After the transfer, from the appearance to the issue docket, of a claim filed against the estate of a testator, the claimant, without objection by the executor, filed an additional paragraph, stating substantially the same cause of action embraced in the original claim, though in a different manner. The executor, after having appeared and filed a demurrer, withdrew the demurrer and moved to strike out such paragraph.

*Held*, that, by his appearance and demurrer, the executor waived the objection that such paragraph had not been filed and placed on the appearance docket, and, therefore, that the motion should be overruled.

PRACTICE.—*Answers to Interrogatories.—Verdict.*—Where answers to interrogatories are not inconsistent with the general verdict, judgment *non obstante* can not be rendered.

SAME.—*Answers Consistent with Complaint.*—Where there is a general verdict for the plaintiff, accompanied by answers to interrogatories, a motion by the defendant for judgment *non obstante* on specified paragraphs of the complaint should be overruled, if the answers be not inconsistent with the plaintiff's right to recover on either of such paragraphs.

Frazer, Executor, *v.* Boss.

CONTRACT.—*Sale.—Bailment.—Transfer of Goods, on Promise to Marry.— Breach of Promise, and Death of Promisor.—Action for Value of the Goods. —Verdict.—Answers to Interrogatories.—Complaint.—Demand.—Rescission. —Fraud.*—In an action against a decedent's estate, wherein one paragraph of the complaint counted upon a promissory note executed to the plaintiff by the deceased, another was in the nature of a *quantum valebat* for goods sold and delivered to the deceased by the plaintiff, and a third was based upon contract and counted upon bailment of the same goods to the deceased by the plaintiff, to be returned on demand, the jury, with their general verdict for the plaintiff, found specially, in answer to interrogatories, that the deceased, intending to cheat and defraud the plaintiff, and intending not to keep his promise, had obtained from the plaintiff the transfer of the goods in question by promising to marry the plaintiff; that the goods had been transferred "upon contract of sale thereof to" the deceased by the plaintiff, and " upon an agreement by him to return the same to her on demand ; " that the goods were then of the value alleged in the complaint; that the deceased had married another woman, and had failed either to return the goods or to pay therefor ; and that an unsuccessful demand had been made upon both the deceased and his executor.

*Held,* that the defendant was not entitled to judgment on the answers notwithstanding the verdict.

*Held,* also, that the answers are inconsistent with the paragraph counting on bailment, but are consistent with the *quantum valebat* count, and, therefore, that the verdict was founded upon the counts upon the *quantum valebat* and the note.

*Held,* also, that the answers show a contract of sale of the goods (reserving to the plaintiff the right to rescind on demand), upon an agreement to marry, fraudulently made by the deceased with intent to cheat the plaintiff out of the goods.

*Held,* also, that, upon breach of the marriage promise, the deceased in his lifetime, and his estate on his death, became liable for the value of the goods.

SAME.—*Mutilation of Promissory Note.—Evidence Explaining.*—It appearing that the signature to the note in suit had been torn off, and then re-attached, it was proper to admit the note in evidence on proof tending to show that the mutilation was the innocent act of a child.

SAME.—*Promissory Note, as prima facie Evidence of Settlement.—Instruction.* —There being evidence tending to disprove a settlement between the plaintiff and deceased embracing the goods in question, it was proper to instruct the jury that, while the execution of the note was *prima facie* evidence of settlement, they should look to all the evidence to determine whether there had been a settlement.

SAME.—*Interest.— When it Commences.—Demand.*—The plaintiff was enti-

tled to interest on the value of the goods sold, not from the date of sale, but from the date of plaintiff's demand, made after breach of the marriage promise.

SAME.—*Common Law.*—Interest is of purely statutory, and not of common-law, origin.

SAME.—*Admission of Record.—Payment.—Evidence.—Presumption.*—An admission, in a complaint to recover for goods sold and delivered, that a specified amount has been paid, is conclusive upon the plaintiff, and, in the absence of evidence to the contrary, is presumed to have been made on the date of the sale.

SUPREME COURT.—*Remittitur of Part of Judgment.—Practice.*—Where, from the evidence and findings of the jury, the true amount that a party is entitled to recover can be ascertained by the Supreme Court, the judgment may be affirmed as to that amount, on condition of a remittitur of the residue.

SAME.—*Erroneous Instruction as to Interest.*—This rule may be applied notwithstanding an erroneous instruction by the lower court solely as to the time when interest should begin to run on the principal.

From the Whitley Circuit Court.

*J. S. Frazer* and *W. D. Frazer*, for appellant.

*W. S. Marshall, J. H. Carpenter* and *J. W. Cook*, for appellee.

WORDEN, J.—Nellie P. Boss, the appellee, filed her claim in the Kosciusko Circuit Court, against the estate of Jacob Boss, deceased, in four paragraphs.

The executor not admitting the claim, the cause was transferred to the issue docket for trial. Afterward, the appellee, by leave of the court, filed two additional paragraphs to her complaint, numbered 5 and 6.

The cause went finally, on change of venue, to the county of Whitley for trial.

The first and third paragraphs of the complaint went out on demurrer, and the fifth was withdrawn, and no question arises upon them here. The cause was tried on the second, fourth and sixth, which were as follows:

"2d. And, for a further and second cause of action and claim against the estate of said deceased, Jacob Boss, the plaintiff herein, Nellie P. Boss, complains of said estate,

and says : That said decedent, in his lifetime and at the time of his death, was indebted to the plaintiff in the sum of six thousand dollars, for goods, wares, merchandise and fixtures, sold and delivered by the plaintiff to said decedent, on, to wit, the 10th day of October, 1872, which said goods, wares, merchandise and fixtures were not invoiced, but sold and delivered as aforesaid in bulk, and comprised all the goods, wares, merchandise and fixtures then in and belonging to plaintiff's store, then in the store-room rented by her of Metcalf Beck, on Centre street, in Warsaw, Indiana ; that said decedent took possession of said property forthwith, and thereafter held, used and converted to his own use, and sold said goods, wares, merchandise and fixtures ; wherefore she can not furnish a more particular bill of particulars of said property ; that said sum of six thousand dollars, for which said goods were sold as aforesaid, is yet due and unpaid, with the accumulated legal interest thereon, except the sum of one thousand dollars, and that there is no set-off or counter-claim to said balance due, and that no notes or other evidence of said balance were given by said decedent to this plaintiff ; and the plaintiff demands an allowance for six thousand dollars against said estate, and for all other and proper relief ; that said Jacob Boss departed this life, testate, on the 28th of August, 1874.

"4th. And, for a further and fourth cause of action, Nellie P. Boss complains of the estate of Jacob Boss, deceased, and says that the said decedent, on the 5th day of July, 1872, by his note, a copy of which is filed herewith, promised to pay the plaintiff, by the name of Nellie P. Lane the sum of five hundred dollars, the copy of which note is marked 'Exhibit A,' and made a part of this paragraph of complaint, which remains due and wholly unpaid, and the same, with the accrued interest thereon, is due to the complainant, and she believes she ought to recover the sum of seven hundred dollars on said note from

said estate, and she demands an allowance and judgment accordingly."

A copy of a note corresponding with that described, payable one month after date, with ten per cent. interest, is set out.

" 6th. And, for a sixth and further cause of complaint against the estate of said decedent, the plaintiff says, that, on or about October 25th, 1872, she delivered into the possession of said decedent a large stock of jewelry, goods, wares, merchandise, fixtures and personal property, in the town (now city) of Warsaw, Indiana, of the value of six thousand dollars, with the contract that said goods, wares, merchandise, fixtures, and personal property should be returned to this plaintiff upon demand ; that the plaintiff did not take an inventory of said goods at the time, but that they were so delivered in bulk, and she can not file a bill of the particulars thereof. Plaintiff avers, that thereafter, and previous to the death of said Jacob Boss, she made a demand upon him for the return of all of said goods, but that he refused so to return the same, or any part thereof, as by his contract aforesaid he was bound to do ; that said Boss departed this life on the 28th day of August, 1874, testate, and that the Hon. James S. Frazer was thereafter duly and legally qualified as the executor of said decedent's estate, by the circuit court of Kosciusko county, State of Indiana, and is still such executor of said estate.

" Plaintiff further avers, that, on the —— day of ——, 187–, she demanded a return of said goods, wares, merchandise, personal property and fixtures so delivered by her to said decedent as aforesaid, of and from said executor, but that he wholly refused to so deliver the same, or any part thereof. Plaintiff further avers, that said goods, wares, merchandise, fixtures and personal property were all converted by said decedent and his legal repre-

sentatives, and no part thereof returned to or paid for to this plaintiff, to the damage of this plaintiff and her estate in the sum of six thousand dollars, with interest thereon since October 25th, 1872, and for which sum she demands judgment, and for other proper relief."

To the original four paragraphs the appellee appended her affidavit in the usual form; and to the sixth she appended her affidavit, " that the above claim against the estate of Jacob Boss, deceased, is in all respects just, and that the balance, as shown, of six thousand dollars, is due and remains wholly unpaid, except six hundred dollars."

The defendant pleaded the general denial, payment, and other matters not necessary to be stated for the purposes of this opinion.

The issues being joined, the cause was submitted to a jury for trial, who returned a verdict for the plaintiff, for the sum of eight thousand five hundred and thirty dollars and forty cents. The jury also returned the appended answers to the following interrogatories propounded to them at the instance of the plaintiff:

" 1st.　Did not the plaintiff transfer to Jacob Boss, deceased, the goods, furniture and fixtures described in the complaint?

" Ans.　She did.

" 2d.　Were not said goods, furniture and fixtures then worth six thousand dollars ?

" Ans.　They were.

" 3d.　Was not said transfer made on or about October 25th, 1872 ?

"Ans.　It was.

" 4th.　Did not said Boss procure said transfer of said goods, fixtures and furniture to him by fraud?

" Ans.　He did.

" 5th.　Did not said decedent procure the transfer of said property, by his promise to marry the plaintiff?

"Ans.　He did.

" 6th. Was not such promise of marriage fraudulently made by said Boss, to secure the transfer of said property to him?

"Ans. It was.

" 7th. Is it not true that said Boss, when he so promised to marry the plaintiff, did not intend to marry her?

"Ans. It is.

." 8th. Did he not make such promise of marriage for the purpose of cheating the plaintiff out of said property?

"Ans. Yes, he did.

" 9th. Did not said Boss refuse to keep said promise of marriage, and did he not marry another woman?

"Ans. He did.

" 10th. Had not said Boss and the plaintiff been previously married and divorced?

"Ans. Yes.

" 11th. Were not the goods and property sued for transferred by the plaintiff to said Boss, upon their agreement for a further marriage?

"Ans. They were.

" 12th. Does the evidence show that the four-hundred-dollar note which has gone into judgment, was given on a final settlement between the plaintiff and said Boss, on the transfer of said property to said Boss?

"Ans. No.

" 13th. Does not the evidence show that the claim for said property remained unsettled after the execution of said four-hundred-dollar note?

"Ans. Yes.

" 14th. Was not said property delivered by the plaintiff to said Boss, upon his agreement to marry the plaintiff, and did he not wholly fail to perform any part of such agreement?

"Ans. Yes, he did.

" 15th. Was not the five-hundred-dollar note offered in evidence torn by the plaintiff's infant child, so that

Boss' name was separated from the body of the note, without the plaintiff's consent?

"Ans.   Yes."

And the jury returned the appended answers to the following interrogatories, propounded at the instance of the defendant:

" 1st.   What was the actual cash value of the goods, furniture and fixtures mentioned in the complaint, at the time the same was transferred by the plaintiff to Jacob Boss, deceased?

"Ans.   Six thousand dollars.

" 2d.   If said property was so transferred by the plaintiff to said Jacob Boss, was it so done upon contract of sale thereof to him?

"Ans.   Yes.

" 3d.   If said property was transferred by the plaintiff to Boss, was it so transferred upon an agreement by him to return the same to her on demand?

"Ans.   It was.

" 4th.   What was the agreement, if any, between the plaintiff and said Boss, upon which the plaintiff delivered said property to said Boss?   State it fully.

"Ans.   Upon an agreement of marriage.

" 5th.   Did Boss pay the plaintiff any sum of money, and how much, upon a purchase of said property, at the time of the delivery thereof by her to him?

"Ans.   He did not.

" 6th.   Did said Boss, at or before the delivery of said property to him by the plaintiff, deliver to her any promissory note in consideration of said property, and, if so, has she brought a suit upon said note, and obtained a judgment upon it?

"Ans.   No.

" 7th.   How much, if any thing, was said property worth, above any payment made therefor to the plaintiff

by Boss, cash and note included ? and, if worth more, did Boss agree with the plaintiff to marry her in consequence thereof ?

".Ans.   We do not find that there was any payment made on the property.

" 8th.   What part of Boss' agreement, if any, in consideration of which the plaintiff delivered said property to Boss, has not been performed ?   State it fully.

"Ans.   No part whatever.

" 9th.   State whether or not the note mentioned in the complaint, when the same was produced in evidence, showed by its appearance that the signature thereof had been torn off and attached again by pasting ?

"Ans.   It did.

" 10th.   If you answer the last question in the affirmative, then state why and how it was so torn, or, if the evidence does not explain it, say so.

"Ans.   The evidence does explain ; it was torn off by plaintiff's infant child."

The defendant moved for judgment in his favor, on the answers of the jury to the interrogatories, notwithstanding the general verdict, but the motion was overruled.

He then moved, on the same ground, for judgment in his favor, on the second and sixth paragraphs of the complaint, but this motion was also overruled.

He then moved for a new trial, filing written causes therefor, but this motion was overruled, and judgment was rendered for the plaintiff, on the verdict.

Exceptions were duly taken, that preserve the questions discussed by the counsel for the appellant, and errors are properly assigned, which we need not state in detail.   We proceed to consider the grounds urged by counsel for the appellant, for a reversal of the judgment.

The sixth paragraph of the complaint, as has been already stated, was not filed until after the cause had been

transferred from the appearance docket to the issue docket
for trial. In short, it was never placed upon the appear-
ance docket at all for rejection or allowance by the execu-
tor. But the appellant, without objection, appeared to it
and filed a demurrer thereto. He afterward withdrew the
demurrer, and moved to strike out the paragraph, but the
motion was overruled. This, it is claimed, was error.

The circuit court of Kosciusko county had jurisdiction
of the subject-matter; and the executor, by appearing to
the paragraph and filing his demurrer thereto, waived the
objection that the claim had not been before filed and
placed upon the appearance docket. This point was fully
considered and settled in the case of *Morrison* v. *Kramer*,
58 Ind. 38. There was, therefore, no error in overruling
the motion to strike out the paragraph. Perhaps, also, the
court would have been justified in refusing to strike out
the paragraph, had the appellant not appeared and de-
murred to it, on the ground that it stated, in a different
manner, in order to meet the exigencies of the evidence,
substantially the same subject of claim as that previously
filed and placed upon the appearance docket, and embraced
in the second paragraph. But upon this point we decide
nothing.

It is not pressed that the court erred in overruling the
motion to render judgment for the defendant, on the
answers to interrogatories, notwithstanding the general ver-
dict. It is clear, we think, that no error was committed in
that respect. There is nothing in the answers that is in-
consistent with the plaintiff's right to recover on the note
counted upon in the fourth paragraph of the complaint.

But it is insisted that error was committed in not ren-
dering judgment for the defendant, on the answers to in-
terrogatories, on the second and sixth paragraphs of the
complaint, in accordance with the motion in that behalf.
If the answers to the interrogatories were not inconsistent

with the plaintiff's right to recover on either of the paragraphs mentioned, the motion, as made, was properly overruled.

The second paragraph is in the nature of a *quantum valebat* count for goods sold and delivered. The sixth paragraph is, as we construe it, based upon contract, and counts upon the bailment of the goods to the deceased by the plaintiff, to be delivered to her again upon demand.

It is abundantly clear, from the answers to the interrogatories, that there was a contract of sale of the goods, by virtue of which they were delivered by the plaintiff to the deceased. In the answer of the jury to the second interrogatory propounded by the defendant, the jury expressly say, that the property was transferred by the plaintiff to said deceased upon a contract of sale thereof to him. This precludes the idea that the goods were bailed to the deceased, or that he received them as bailee. The answers, therefore, seem to us to be inconsistent with the right of the plaintiff to recover upon the sixth paragraph of the complaint, which counts upon a bailment and not a sale of the goods. It seems to us, looking at the answers of the jury to the interrogatories, that their verdict must have been intended to be based upon the second and fourth paragraphs.

It remains to enquire, whether the answers to interrogatories are inconsistent with the plaintiff's right to recover on the second paragraph.

The answers to interrogatories, at first blush, may seem to be inconsistent with themselves. We have seen that they show clearly a sale of the goods by the plaintiff to the deceased, and a delivery in pursuance of the sale. While the property was sold by the plaintiff to the deceased, and delivered in pursuance of the sale, the jury say, in answer to the third interrogatory propounded by the defendant, that the property was transferred upon an agree-

ment by the deceased to return them to the plaintiff on demand. These answers, we think, may be reconciled on the theory that there was a sale and delivery of the prop-·erty by the plaintiff to the deceased, and at the same time a contract between the parties, by which the plaintiff was to have the right to rescind the contract of sale and have the property restored to her on demand.

It appears, then, by the answers, that the property was sold and delivered by the plaintiff to the deceased, with an agreement that she might rescind the contract of sale and have the property restored to her on demand; that the sale was made upon an agreement by the deceased to marry the plaintiff, which agreement he fraudulently entered into for the purpose of obtaining the property from the plaintiff, and which he did not intend to fulfil, and which he broke by marrying another woman. In all this there is nothing inconsistent with the plaintiff's right to recover upon the second paragraph of her complaint. The fraud imputed to the deceased, in making the contract of marriage without any intention of fulfilling it, and for the purpose of possessing himself of the property, we do not regard at all as an essential element in the plaintiff's right of recovery.

The deceased acquired the plaintiff's goods upon a contract which he failed to perform. He held them, therefore, without consideration, or rather, perhaps, upon a consideration that failed. He was in his lifetime, and his estate now is, upon the plainest principles of equity, liable to her for the value of the goods. See 2 Chitty Con., 11th Am. ed., pp. 920, 921. In a note to the page last cited, it is said : " So, in any case, where money is advanced upon an executory contract, which the contracting party fails to perform, it is in the election of the other party to treat the contract as rescinded, to disaffirm it, and recover back his money, as money paid upon a consideration which has failed." In the same

note it is again said : " Where money is paid by one party in contemplation of some act to be done by the other, which is the sole consideration of the payment, and the thing stipulated to be done is not performed, the money may be recovered back." There can be no difference in principle between money paid in such case, and goods advanced. Where goods are thus sold upon a contract which the other party fails to perform, the party selling the goods must have his action to recover on the implied obligation to pay what they are reasonably worth.

To be sure, the right of action upon contracts to marry does not survive, but dies with the person. 2 R. S. 1876, p. 309, sec. 783. This, however, was not an action to recover damages for the breach of the marriage contract. It was an action to recover as for goods sold and delivered, based upon the failure of the deceased to perform the agreement on his part; and, in our opinion, it was well brought.

It may be remarked, that the cases of *Chamberlain* v. *Williamson*, 2 M. & S. 408, and *Stebbins* v. *Palmer*, 1 Pick. 71, give countenance to the idea that where a breach of contract to marry occasions injury to the estate of the promisee, and is not confined to personal injury, the action survives for the purpose of recovering the injury to the estate. See also 1 Chitty Pl., 16th Am. ed., p. 22 and note *o*. We, however, do not decide the point upon this ground, but upon that above stated. We are, therefore, of opinion, that no error was committed in overruling the motion to render judgment for the defendant on the answer of the jury to interrogatories, on the second and sixth paragraphs of the complaint.

We may here notice the 13th instruction given by the court to the jury, to which objection is made. The instruction need not be set out. It was in harmony with our views of the law in relation to the plaintiff's right to

recover as for goods sold and delivered, upon the breach by the deceased of his contract to marry the plaintiff.

We come to the questions arising on the motion for a new trial.

On the trial of the cause, the plaintiff offered in evidence the note described in the fourth paragraph of the complaint, and it appeared that the note had been torn in such a manner as to take off a part of the name of the deceased, but the parts had been pasted together again, so that the note was complete. The defendant objected to the introduction of the note in evidence on account of the mutilation, and thereupon the plaintiff gave evidence tending, as we think, to show that it was innocently done, in the manner stated in the answer of the jury to one of the interrogatories. And thereupon the court permitted the note to go in evidence to the jury, over the exception of the defendant. We are of opinion, that, if any evidence was necessary to explain the mutilation of the note, and that it was innocently done, the evidence given tended to furnish the explanation. The only doubt about the evidence arose in reference to the identity of the paper, the tearing of which was accounted for; but we think it tended to show that it was the note in question, and that the evidence was sufficient to let the note go to the jury.

The defendant asked the court to charge the jury, " that the execution and delivery of the note of October 25th, 1872, by Jacob Boss to Nellie P. Boss, was *prima facie* evidence that all prior accounts between the parties were settled at the time of giving said note, and the legal presumption is, that, at the date of giving said note, all prior accounts were settled between the said Jacob Boss and Nellie P. Boss."

This charge the court refused, but it had given the same charge in substance, adding to the charge given the following explanation:

"What is meant by a *prima facie* case is, that, in the absence of all other proof, that would be deemed and taken to be true, and would be sufficient to establish the fact, but it may be overcome by other proof; so, in considering the *prima facie* case made by the execution of the note, you should also consider all the other evidence in the case bearing upon the question of a settlement."

We understand from one of the briefs of counsel for the appellant, that the correctness, as matter of law, of the matter thus added by the court, is not disputed; but it is insisted that there was no evidence to which it was applicable. In other words, it is insisted that there was no evidence that, at the giving of the note mentioned, there was not a full settlement of all matters between the parties.

The evidence in the cause is voluminous, but we have read it carefully, and are of opinion that there was evidence to which the entire charge was applicable, tending to disprove such settlement.

Some objections are made to the rulings of the court in rejecting certain evidence offered, but we are of opinion that no error was committed in this respect, that should reverse the judgment. This opinion has necessarily extended to such a length, that it is not thought advisable to further extend it by stating these objections in detail.

We can not reverse the judgment on the evidence as to the general merits of the cause. In this respect, the verdict was fully sustained by the evidence. The evidence of some of the witnesses, as well as some of the statements imputed to the deceased, strongly tended to show that the stock of goods was worth the full amount claimed for it by the plaintiff, $6,000. On the other hand, other evidence tended to show that it was worth less than half that sum. This, however, was a question for the jury, and we will not disturb their verdict on the ground of an over-estimate of the value of the goods.

But, in any aspect of the case, the damages assessed were clearly excessive; the amount of the recovery was too large; and this was one of the grounds assigned for a new trial.

We have made no computation in this respect, but suppose that the verdict, from its amount, must have included the note, with the interest upon it, and the $6,000 for the goods, with the interest thereon from the time of the sale.

: As has been seen, the recovery must have been had upon the second and fourth paragraphs of the complaint. The fourth was based upon the note, so that the second was the only one that upheld the recovery for the goods. But in the second paragraph the plaintiff claimed that the whole of the $6,000 with interest was due and unpaid, except the sum of one thousand dollars. This was an admission of record that one thousand dollars of the claim had been paid or satisfied; and the admission, for the purposes of the case, was conclusive and could not be controverted. 1 Greenl. Ev., sec. 27. We do not decide that the court might not have given leave to amend the complaint in this respect, upon proper application. If such amendment could have been made, no application for that purpose was made to the court. We must take it, then, to have been conclusively admitted by the pleading, that one thousand dollars of the amount had been paid or satisfied. And we think it reasonable to refer the payment or satisfaction to the time when the goods were sold.

This leaves but $5,000, and, at most, the interest thereon from the time of the sale of the goods, which could be recovered on the second paragraph. And, in respect to the interest, we think the court fell into an error in its charge to the jury. The court, in its 9th charge, directed the jury, in substance, that, if they found for the plaintiff on the second paragraph, they should allow interest at the

rate of six per cent. from the date of the sale of the goods. This charge, as thus unqualifiedly given, was erroneous.

The right to recover interest upon the loan or forbearance of money does not seem to have existed at common law, but is the creature of statute. In Ord on Usury, side page 31, it is said : " Among us, the statute of Henry VIII. was the first that gave any connivance to the practice of lending at interest. Till that time, all degrees of it were looked upon as equally illegal; and all persons, who took it, were indiscriminately subjected to the same punishment."

Our statute on the subject of interest provides, among other things, that, " On money due on any instrument in writing, or on settlement of account from the day the balance shall have been agreed upon, on money had and received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof, on money loaned or due and withheld by unreasonable delay of payment, interest shall be allowed at the rate of six dollars a year on one hundred dollars, or at such rate as the parties may agree upon, not exceeding six dollars a year on one hundred dollars." 1 R. S. 1876, p. 600, sec. 4.

The case made by the paragraph does not come within any of the specifications of the statute, unless it be that naming " money * * due and withheld by unreasonable delay of payment."

But it was a question for the jury, and not for the court, to determine, whether the money due for the goods was withheld by unreasonable delay of payment. *Rogers* v. *West*, 9 Ind. 400. The jury, to be sure, might have so found, had the question been left to them. But the charge took from them all consideration of that question, and under it the jury, having found for the plaintiff on the paragraph, had nothing to do but compute the interest from the date of the sale.

The charge should have been so framed as to have directed the jury, in case they found for the plaintiff on the paragraph, to allow interest for such time, if any, as they should find the money was withheld by unreasonable delay of payment.

But perhaps any injury which the appellant may have suffered, in consequence of the error in the charge, may be obviated.

It was in evidence, that, on the 10th day of February, 1874, the deceased married another woman, and thereby put it out of his power to comply with his contract with the plaintiff; and, from that time until the death of the deceased, the plaintiff seems to have been making unsuccessful efforts to procure a settlement with the deceased, and payment for the goods. We think, that, from that time forward, at least, payment for the goods was withheld by unreasonable delay, and have no doubt the jury would have so found under proper instructions, and have computed interest accordingly, even if they had not allowed interest from the time of the sale of the goods. In other words, we do not think the appellant could have been injured by the error in the charge of the court, beyond the amount of interest on the claim from the date of the sale of the goods up to January 10th, 1874.

The judgment below was rendered on the 20th day of September, 1877.

The interest on the five thousand dollars from January 10th, 1874, to September 20th, 1877, is one thousand one hundred and eight dollars and thirty-three cents, making, with the principal, six thousand one hundred and eight dollars and thirty-three cents.

The amount due on the note specified in the fourth paragraph, at the date of the judgment, including the interest, was seven hundred and sixty dollars and forty cents. This added to the sum, before mentioned, of six thousand

one hundred and eight dollars and thirty-three cents, makes the sum of six thousand eight hundred and sixty-eight dollars and seventy-three cents ($6,868.73).

We have concluded, that, for the last named sum, the judgment below ought to be affirmed, if the amount of the judgment below in excess of that sum shall be remitted as of the date of the judgment below. Otherwise the judgment below will have to be reversed.

It is therefore ordered, that the judgment below, for the sum of six thousand eight hundred and sixty-eight dollars and seventy-three cents, be affirmed, at the costs of the appellee, if, within sixty days, she shall enter a *remittitur* for the excess of the judgment above that sum, as of the date of the judgment below. Otherwise it is ordered that the judgment below be reversed, at the costs of the appellee.

Opinion filed at November Term, 1878.
Petition for a rehearing overruled at May Term, 1879.