Skaggs v. The City of Martinsville.

---

◆

---

No. 17,135.

## SKAGGS v. THE CITY OF MARTINSVILLE.

MUNICIPAL CORPORATION.—*Ordinance Regulating Flowing Water from Wells and Springs.—Streets and Alleys.—Constitutional Law.*—A city ordinance providing penalties against owners or occupants of lots for permitting water from any flowing well or spring to flow upon any of the streets or alleys of the city does not constitute a taking of property, but is simply a requirement that the property owners shall so control it as not to impair the usefulness of the public streets and jeopardize the public health.

SAME.—*Power Over Streets and Alleys.—Incidental Power as to Use of Property. — Flowing Water.*—The power expressly given to control the streets and enforce sanitary regulations necessarily implies the power to require the citizen to so control the uses of his property as not to impair or defeat the powers so expressly given. Such incidental powers are implied when necessary to the accomplishment of the purposes for which municipal corporations are created.

SAME.—*Reasonableness of Ordinance.*—Courts will not inquire into the reasonableness of an ordinance when power exists to pass it.

SUPREME COURT PRACTICE.—*Reference to Page and Line of Record.*— Where evidence admitted and objected to is referred to as on "p. —, l. —," the objection can not be entertained for the reason that no

Skaggs v. The City of Martinsville.

reference is made as required by the rules and practice of the Supreme Court.

EVIDENCE.—*Impeaching Question.*—An impeaching question which has no foundation as to time, place or circumstance for the inquiry is insufficient.

From the Morgan Circuit Court.

*W. R. Harrison*, for appellant.

*J. H. Jordan* and *Oscar Matthews*, for appellee.

HACKNEY, J.—The appellant has appealed from a judgment of the circuit court assessing a penalty for the violation of an ordinance of the appellee.

The ordinance provides penalties against owners or occupants of lots for permitting the water from any flowing well or spring to flow upon any of the streets or alleys of said city.

The validity of this ordinance is attacked as violating section 21 of the Bill of Rights (R. S. 1894, section 66), which provides that "no man's property shall be taken by law without just compensation; nor, except in case of the State, without such compensation first assessed and tendered."

The theory of the appellant is that a flowing well or spring upon one's lot is property; that to prohibit the flowing of the water therefrom into a public street and through the ditches and drains of such street, without regard to the absence of any other natural course of drainage therefor, is to deprive him of that property, and that this, under the guaranty of the Bill of Rights, can not be done by a penal ordinance providing no compensation. The necessity for pure water in the occupancy of the lot, the value of a flowing spring or well, the requirement for drainage, the servient character of the lower lands in supplying drainage for the adjacent upper lands, and the harmless influence of the slight, pure stream upon the streets and the absence of injury to

health of the citizens have been urged in support of the appellant's theory.

This argument, however, is against the reasonableness of the ordinance, and is remote from the question of power to pass and enforce the ordinance. The rule is firmly settled in this State, that the courts will not inquire as to the reasonableness of an ordinance when power exists to pass it. *Steffy* v. *Town of Monroe City*, 135 Ind. 466; *Champer* v. *City of Greencastle*, 138 Ind. 339; *A Coal-Float* v. *City of Jeffersonville*, 112 Ind. 15; *Cleveland, etc., R. W. Co.* v. *Harrington*, 131 Ind. 426.

These cases hold, with equal firmness, that the inquiry must be confined to the existence of power. The fallacy in the appellant's insistence against the existence of power is in the position that the appellant must be deprived of his property, whereas, he is but required to control the flowage. If we were permitted to inquire into the reasonable operation of the ordinance, it would occur to us at once to suggest the means of caring for the overflow, if a well, in preventing it by capping and valves, and, if a well or a spring, by conducting it through pipes or tile to the most convenient outlet. But, in considering the question of power to maintain the ordinance regulation, it is conceded by appellant's learned counsel that municipal corporations, in this State, have received the express power of exclusive control over streets and alleys. R. S. 1894, sections 3623, 3541, R. S. 1881, sections 3161, 3106.

It must be conceded also that questions of public health and safety are proper subjects of municipal legislation, and that cities may "carry out and enforce sanitary regulations." R. S. 1894, sections 3615, 3616.

The control of streets implies proper drainage and the maintenance of a hard, smooth and even street surface.

It is manifest that such control may be materially interfered with by the flooding constantly of the gutters, making the earth therein soft so that vehicles in crossing, stopping in, and passing along them will cut them and break their surface. Such disturbance necessarily creates pools, and impedes the flowing of the drainage from the streets. In addition to this, it is manifest that continued pools and damp gutters impregnate the air with impure, foul and unwholesome odors, breeding miasma and malaria; that a well may put forth pure water, or that the quantity is slight, can not affect the question, since, if one property owner may maintain a flowing well upon his lot, the overflow from which, though slight, is turned upon the street, many may do the same, and the question of quantity or comparative quantities of water so turned upon the street would become of impossible regulation or control.

The power expressly given to control the streets and enforce sanitary regulations necessarily implies the power to require the citizen to so control the uses of his property as not to impair or defeat the powers so expressly given. Such incidental powers are not unusual but are implied when essential to the accomplishment of the purposes for which municipal corporations are created. *Champer* v. *City of Greencastle, supra; Steffy* v. *Town of Monroe City, supra; Kyle* v. *Malin*, 8 Ind. 34; Beach Public Corp., section 637; Cooley Const. Lim. (6th ed.) 231; 1 Dillon Munic. Corp. (4th ed.), section 89; Angell & Ames Corp., 346, 364; 15 Am. & Eng. Encyc. of Law, 1040.

If the appellant's position were correct, that the requirement that he should control the overflow from his well is "the taking of property," it does not follow that compensation was not assessed and paid in the condemnation of the way for street purposes, in which event no

question could be made, reasonably, against the validity of the ordinance. It is perfectly clear, however, that the regulation is not a taking of property but is a simple requirement that the property owners shall so control it as not to impair the usefulness of the public streets and jeopardize the public health.

It is but the assertion of the well known rule that every man must so use his own property as not to unreasonably impair the use by others of their property, with the exception that in this instance he is forbidden to interfere with the enjoyment of public rights. The case of *Barnard* v. *Sherley*, 135 Ind. 547, is urged as fully supporting the appellant's claim of right to flow the water from his well upon the street. That was a case between individuals involving the violation of no expressed inhibition of the law, but involving the extent to which an upper proprietor might employ natural resources of the earth, upon his own premises, the degree to which such use might affect a lower proprietor and the instances in which equity would interfere to deny such uses. Here we have the violation of an authorized ordinance, passed in the interest of the public, and an act which involves an unfounded private demand against a proper and legal public right.

An objection is made to the ruling of the circuit court in admitting certain evidence referred to as on "p. —, l. —." This objection is not entertained for the reason that no reference is made to the admitted evidence, as required by the rules and practice in this court.

One of the witnesses for the appellee was asked, upon cross-examination, if he had not bored upon his lot for the purpose of securing a flowing well, and he stated that he had bored for a well but had not desired a flowing well. A witness, subsequently called by the appellant, was asked by appellant's counsel to state what the

above witness had said of his disappointment in not getting a flowing well. To this question the court sustained the appellee's objection. The alleged error in this ruling does not present in form, substance, or subject-matter a proper effort at impeachment. The inquiry of both witnesses was immaterial, and there was no foundation as to time, place or circumstance for the inquiry of the second witness.

Finding no error in the record, the judgment of the circuit court is affirmed.

Filed Dec. 18, 1894; motion for rehearing overruled April 24, 1895.