170 So.2d 709 (1964)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Christopher MATISE et al., Defendants-Appellees.
No. 6273.
Court of Appeal of Louisiana, First Circuit.
December 21, 1964.
*710 W. Crosby Pegues, Jr., Glenn S. Darsey, D. Ross Banister, Brunswig Sholars, Jesse S. Moore, Jr., Baton Rouge, for appellant.
Joseph D. Lupo, Independence, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.[*]
ELLIS, Judge.
This is an expropriation proceeding involving a taking by the Louisiana Department of Highways of a permanent servitude of right-of-way over two parcels of land having a total area of 1.114 acres. In addition to the servitude, a single improvement consisting of approximately 6000 lineal feet of serviceable but dilapidated barbed wire fencing was taken in full ownership. The State's experts and the owner disagree as to whether it was a two or four strand barbed wire fence. The property is located near Independence on State Route 1065 which was widened and hard-surfaced as a result of this project.
The sum of $500.00, representing the estimated value of the servitude and improvement taken, was deposited in the registry of the court. No sum was allowed by the Department for severance damages to the remainder of defendant's strawberry farm.
The trial court on November 18, 1963 rendered judgment in the amount of $1650.00 in excess of the $500.00 deposit. This was arrived at by a determination that $400.00 represented the market value of the land, $750.00 represented the value of the fence taken, and $1,500.00 represented the damages sustained by the "straw patch".
The Department's appraisers were Mr. LeRoy Cobb and Mr. V. W. Cagle, both of Baton Rouge. Mr. Cobb arrived at an estimate of $250.00 per acre as the value of the servitude taken. However, this estimate was obviously not arrived at by using the four sales which Mr. Cobb testified were comparable, as two of the four sales were passed and recorded subsequent to the date that the appraisal was made and servitude taken.[1]
The other two sales were from Orland to Battaglia in September 1958 and from Canale to Ducoing in March 1960. These transactions were for a price of $242.91 per *711 acre for a tract 24.70 acres in size, and $174.49 per acre for a tract 74.50 acres in size, respectively. The Battaglia property is across the highway from the subject property and the Ducoing property is ¾ mile from the subject property on the same highway. In both of these comparables a sum was subtracted from the purchase price representing the value of the improvements in order to arrive at the portion of purchase price attributable to land.
The defendant testified he believed his property to be worth $500.00 per acre but this opinion is unsupported by any logic or evidence in the record. Likewise, the opinions of Anthony Lapuma and Carlo Zabbia that the land was worth $500.00 per acre are entirely unsupported by logic or evidence. These gentlemen were residents of the area and property owners but were not experts in the field of property appraisal and their unsupported opinions must be entirely rejected on this point. Had their opinions been properly based on logic or evidence they would merit consideration.
In an attempt to show that the value of the land per acre at the time of the taking was more than the $250.00 per acre estimated by Mr. Cobb, the defendant introduced a certified copy of an act of sale from Joe Patanello to the State of Louisiana and the Department of Highways covering 3.039 acres of timbered land for the price of $2,588.00. Mr. Patanello also testified that the value of the timber on the land was $650.00 and that this would indicate a price per acre for the land alone of over $600.00.
The Patanello tract was located about six miles from the tract in question and was not farm land, but timbered property. We are not convinced that the sale is comparable and therefore must reject it.
We conclude, therefore, that the value of the property taken was $250.00 per acre. Considering that 1.114 acres was expropriated, the amount due defendant is $278.50 for this item.
Mr. Cobb allowed $221.00 for the value of the fence taken. The defendant testified that a new fence would cost $750.00 plus labor. It is clear from the following exchange between counsel for the Highway Department and the trial judge that the latter allowed the replacement cost and not the worth of the old fence at the time of the taking.
"BY MR. MOORE:
"If the court please, I am again going to object to the replacement cost of the fence. The only question, which is the subject here, is how much the old fence was worth, not what it would cost to replace the fence new.
"BY THE COURT:
"I can't agree with you on that. If the highway hadn't taken it over and taken the fence down, why he wouldn't have had to replace it, so I can't agree with you on that."
It is abundantly clear in our jurisprudence that the value of the improvement taken, and not the replacement cost of a similar but new improvement, is the proper measure of compensation. The only evidence as to the value of the fence at the time of its taking is the testimony of Mr. Cobb that the value was $221.00. This amount was included in the deposit made by the Highway Department to secure the order of expropriation. Therefore, this court cannot award more than $221.00 for the fence taken.
However, to the extent that the taking of the fence rendered the remaining property unusable as a strawberry farm, the owner has been damaged. The proper measure of these damages would be the cost of replacing the fence. The fence was replaced and the owner testified that the replacement cost was $412.00 excluding *712 any sum representing labor. In addition, the sum of $300.00 to $500.00 would have to be spent for gates and culverts. This would bring the cost of a new fence to $750.00, plus labor. The defendant testified that it took "a lot of my time" to build the new fence and estimated the value of his time at $700.00 to $1000.00. This court cannot, however, approve the inclusion of this amount in the award for the reason that it is speculative. There is no indication as to the number of hours the defendant was engaged in the construction of the new fence, nor was there any indication of the value he placed on his time.
The trial court allowed $1500.00 as damages to the defendant's strawberry farm resulting from the taking of a portion of the pine thicket. Normally, natural growth is appraised as part of the land. Defendant contends, however, that a pine thicket on a strawberry farm is a valuable asset which substantially increases the value of the farm as a whole. The thicket provides a degree of shelter to the plants from the cold. It yields pine straw which is placed around the plants to prevent the growth of weeds. In addition, the thicket is a source of income to the owner who can sell the excess pine straw to his less fortunate neighbors.
This is not disputed and the trial judge took judicial notice of these facts. It should be noted, however, that to some extent, the use of pine straw in the cultivation of strawberries is being replaced by the use of plastic sheets to cover the rows. To what extent the new technique had replaced the old as of the date of the trial is not clear from the record. Nor is it clear what value a thicket actually adds to a farm.
Defendant's witnesses testified the pine thicket would add $1000.00 to $2000.00 to the value of the farm. This was not supported by example. In addition, only 1/3 acre of pine thicket was destroyed and there is no evidence to indicate how much of this or other thickets remained on this farm. This court cannot award damages on a speculative basis. The allowance of $1500.00 by the lower court is reversed.
The expropriating authority has a right to set off against damages otherwise allowable to the owner, an amount representing the value of any special benefits to the owner's remaining property. From State, Through Dept. of Highways v. Hayes, La.App., 150 So.2d 667, and other cases cited therein, it is clear that the property owner adjacent to a road improvement project is in a special situation and that any increase in value in his property by virtue of the improvements made to the road may be set off against damages otherwise allowable. The State did not prove in this case what that increase in value was, but it is obvious from defendant's own witnesses that there was such an increase. A compelling piece of evidence in this regard is that 58 of the 59 property owners involved in this widening and hard-surfacing project donated the necessary land to the Highway Department, realizing that the benefits received would outweigh the value of the land donated.
Accordingly, having failed to prove the value of the special benefits to defendant's property, no amount will be offset against the $750.00 hereinabove awarded to cover the damages to the farm as a result of the taking of the existing fence.
Judgment of the lower court is amended to reduce the total award to the sum of $1,150.00.
Amended and affirmed.
NOTES
[*] Due to the death of HERGET, J., prior to rendition, but after his concurrence therein, this opinion is rendered unanimously by ELLIS, LOTTINGER, LANDRY and REID, JJ.
[1] Mr. Cobb testified that the appraisal was made May 8, 1961. The sale from Costa to Adams was passed October 5, 1961 and the sale from Canale to Barcia was passed in December 1961. By stipulation it was admitted that if called Mr. V. W. Cagle would testify substantially as Mr. Cobb had.