JULES T. GRADISON *v*. STATE OF INDIANA ET AL.

[No. 770S158. Filed August 14, 1973.]

*David S. Richey, Parr, Richey, Obremsky, Pedersen & Morton,* of Lebanon, *Arch N. Bobbitt, Ruckelshaus, Bobbitt & O'Connor,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John T. Carmody,* Deputy Attorney General, for appellee.

PRENTICE, J.—This is an appeal by the landowner (Appellant) from a judgment for $140,000.00 and interest, being the amount determined by jury following the appropriation of land by the state (Appellee) for Highway I-465. Nineteen errors are assigned by the landowner and will be hereinafter designated and considered as they appeared in his brief. We reverse the judgment of the trial court upon issue No. 2 but give an opinion upon each issue presented, except Nos. 11, 12

and 14, inasmuch as they and similar questions appear likely to arise upon the retrial.

(1) The first issue argued by the landowner is presented both by testimony offered by the landowner, objected to by the state and excluded by the court and by the state's instruction No. 2, given over the landowner's objection. This issue relates to the method of evaluating land which the evidence has disclosed may be utilized as a sand and gravel mine.

Witness Park, testifying as an expert for the landowner, was asked upon direct examination if he had an opinion as to the price of gravel and sand in the area at the time of the appropriation, and he responded that he did. He was then asked to state such opinion, to which the state objected. The objection was sustained and an offer to prove was made. Another expert witness for the landowner had previously testified that the land appropriated contained 10,177,000 net mineable tons of sand and gravel, and Mr. Park had given his expert opinion that the land in question contained 10,260,000 tons.

Instruction No. 2 aforesaid and the objection thereto were as follows:

### "INSTRUCTION NO. 2

You are instructed that sand and gravel in place, are part of the land and may not be evaluated separately from the land; but must be considered as part of the land itself. Thus, you may take into consideration evidence that the land does contain sand and gravel as a factor to be used in establishing the fair market value of that land, but it would be improper for you to base your evaluation on the amount of sand and gravel which might be removed from the land multiplied by a fixed price per unit."

"Defendant objects to Plaintiff's Instruction Number 2, for the reason that the same is no longer the law in the State of Indiana, and it should not be the law in the State of Indiana. That the law, upon which this was originally based, has been changed, and the law in other jurisdictions indicates that it is permissible to consider volume of mineral

available for mining, and the rate or value per ton of such minerals, or fixed price per unit."

In determining the amount of damages in a condemnation case, the jury must find the *fair market value of the property at the time of the taking*. As pointed out by the landowner in his brief, quoting Chief Justice Arterburn from *Southern Indiana Gas & Electric Company* v. *Gerhardt* (1961), 241 Ind. 389 at p. 393, 172 N. E. 2d 204:

"* * * The 'fair market value' is a determination of what the land may be sold for on the date of the taking if the owner were willing to sell. Anything affecting the sale value at that time is a proper matter for the jury's consideration in attempting to arrive at a 'fair market value'."

Stated differently and also called to our attention by the landowner and quoting from *Clark* v. *United States* (1946), 8th Cir., 155 F. 2d 157, is the following:

"* * * In eminent domain proceedings the rule is that all facts which an ordinarily prudent man would take into account before forming a judgment as to the market value of property he contemplates purchasing is relevant and material. * * *."

Unquestionably, the sand and gravel content of the land taken and its value, *as it lay* or *in place* was relevant; as it was a factor properly to be considered in arriving at the fair market value. We have not been cited to Indiana authority upon the issue, but the rule generally accepted in other jurisdictions is that "* * * the value of such mineral deposits cannot be determined independently of the land of which it is a part. It cannot be considered as so much potential merchandise to be evaluated as such. The land taken must be valued as land, with the factor of mineral deposits given due consideration. * * * Thus, the value as stone land suitable for quarrying—but not the value of the stone separate from the land—is a proper subject for consideration, both by the witnesses and the jury in fixing the amount of just compensation

to be awarded. * * * All legitimate evidence tending to establish value of the land with the minerals in it is permissible. This is not to say that such minerals are to be separately evaluated, but that consideration may be given to the quantity of the mineral that can be extracted and to the value thereof, purely as evidence for arriving at the value of the land. * * *." Nichols on Eminent Domain, Third Edition, § 13.22 and cases there cited.

The landowner insists that the excluded testimony was tendered only as evidence of the highest and best use of the land taken and to show that the presence of the sand and gravel enhanced its value. We do not agree that the testimony was offered in such context or that it was likely to be so regarded. Rather, we agree with the state that, if allowed, such testimony would have indicated that the land had a fair market value equal to the local market price per ton for sand and gravel multiplied by the number of tons estimated to be contained within the land. The excluded question and the answer offered did not relate to the land or the gravel therein, i.e., to the value of the sand and gravel *in place.* It concerned the market value of sand and gravel from any source whatever— the price a purchaser would be willing to pay at that location. It did not shed any light upon the issue of whether or not the landowner's sand and gravel could be removed from beneath the overburden and sold at a profit. Obviously, if it could not, its presence contributed nothing to the value of the land. The landowner has cited us to numerous cases wherein the courts have held that evidence of the value of minerals contained in the land was admissible. In the cases cited, however, the evidence was as to the value of such minerals in their *natural state,* i.e., *as they lay.* The primary case relied upon by the landowner upon this point is *National Brick Co.* v. *United States* (1942), (Dist. of Columbia Cir.), 131 Fed. 2d 30. In that case, the court stated that no rule was better established than that the special value of land due to its adaptability for use in a particular business is an element which

the owner of land is entitled to have considered in determining the amount to be paid as just compensation. The trial court had excluded evidence of the value per ton of the sand within the appellant's land, "in the bank just as it is now." In reversing, the court said:

"We think the inquiry should have been whether the property was valuable in the open market for the sale of sand or for the use of sand in the making of bricks; and that in order to reach a fair conclusion in this respect the jury should have been informed by competent witnesses as to the quantity of the sand, the quality of the sand, the uses to which it might be put, whether there was a market for it, and *the value of the land with the sand in that market in its then condition.*" (Emphasis ours).

*United States* v. *180.37 Acres of Land, etc.* (1966), U. S. Dist. Ct., Western Dist. Va., 254 Fed. Supp. 678, also cited by the landowner, is an exception among the cases holding that the "unit method" of valuation is not permissible. It must be noted in that case, however, that there was no evidence of comparable sales and that it was thus assumed that none was available. The court said: "* * * It was the feeling of the commissioners that the method employed in ascertaining the market value * * * was the most logical one to use 'in order to do substantial justice' *under the facts and circumstances of this case,* and this Court cannot say that this conclusion is clearly erroneous." And thus the court accepted the commissioner's method of valuatiton as a matter of necessity, or at least of expedience in the particular case and in no manner endorsed it as being generally acceptable. Although the landowner in the case before us objected to the evidence of comparable sales introduced by the state, it was accepted by the trial court, and we think correctly so. It is also to be noted in *United States* v. *180.37 Acres of Land, supra,* that the valuation was a "royalty" valuation, which we take to mean an estimate of the value of the mineral *in place,* which was twenty-five cents per ton, and that the estimated quantity, for

valuation purposes, was predicated upon a seventy percent rate of recovery. We therefore, think the circumstances of such case are not analogous to the case at bar.

(2) A standard instruction was given, over landowner's objection, concerning the setting-off of special benefits to the landowner's residue against damages thereto. The landowner maintains that there was no evidence of such benefits and hence the instruction was improper as not conforming to the evidence. He concedes that there was evidence that as a result of the highway construction a portion of the residue would no longer flood, as it did before; but he contends that this does not constitute a "special benefit" inasmuch as the improvements also benefited, in a like maner, all lands in the vicinity that had been subject to prior floods. The law is clear in Indiana that where benefits to the residue are deductible from the compensation allowable for damages thereto, the benefits must be special to the property in question. *State* v. *Ahaus* (1945), 223 Ind. 629, 63 N. E. 2d 199; *State* v. *Smith et ux.* (1957), 237 Ind. 72, 143 N. E. 2d 666. What is not so clear, is what is meant by "special benefits" as opposed to "general benefits." We believe, however, that the landowner seeks to place too narrow an interpretation upon those benefits to be considered as "special." To be direct or peculiar to an owner, a benefit does not have to be unique to him, and a benefit otherwise qualifying as "special" is deductible, notwithstanding that some or all of the other property adjacent to the improvement is also benefited. In *Herndon* v. *Pulaski County* (1938), 196 Ark. 284, 117 S. W. 2d 1051, certiorari denied 305 U.S. 642, 59 S. Ct. 148, 83 L. Ed. 414, it was held that where other owners, no portion of whose lands had been taken for the new road, received the same benefits which the plaintiff derived, this did not prove that the plaintiff had not received special benefits to her land. The topic is annotated at 13 A. L. R. 3d 1168 *et seq.* and leads to the conclusion that the comparison is not to be made merely with other lands directly affected by the project but with

the general community benefited thereby, and that if the benefits to a particular affected owner were *substantially greater in degree* than those accruing to the other landowners in the community, he will be held chargeable with the excess benefits he enjoys, as an offset to his damages. Whether or not the benefits are held to be "special" or "general" then, to a large extent must be determined by the circumstances of each case. This liberalized view is entirely consistent with the equities, for the theory supporting damages in eminent domain is that a landowner is entitled to *just compensation*—not to a windfall at the expense of the public. This does not appear to be a substantial departure from the rule announced by this Court in *State* v. *Smith, supra:*

> "* * * if the value of the appellees' residual land is enhanced because the location of the new highway has made it desirable for purposes other than farming, such enhanced value is a special benefit to them, although other landowners along the highway may be similarly benefited; * * * ." 237 Ind. at 79.

With regard to this assignment, however, we find no evidence in the record from which the jury could have determined the extent or value of the aforesaid benefits. Evidence that the residue was benefited, without evidence from which the jury may properly determine the value thereof, will not support a setoff against the recovery for damages to the residue. *State Highway Department of Georgia* v. *Andrus* (Sup. Ct. of Ga. 1956), 212 Ga. 737, 95 S. E. 2d 781; *Smith* v. *State Highway Department of Georgia* (Ct. of Appeals of Ga. 1962), 105 Ga. App. 245, 124 S. E. 2d 305, *State Department of Highways* v. *Matise* (Ct. of Appeals of La. 1964), 170 So. 2d 709.

In eminent domain cases, the jury may not base its verdict upon their independent knowledge of values. The reason for such rule was clearly set forth in *Washburn* v. *Milwaukee & Lake Winnebago R. Co.*, 59 Wis. 364, 18 N. W. 328, 331, 20 Am. & Eng. R. Cas. 225:

"* * * if the testimony of value and damages is conflicting, the jury may resort to their own general knowledge of the elements which affect the assessment, in order to determine the relative weight of conflicting testimony, but their assessment must be supported by the testimony, or it cannot stand."

In *Smith* v. *State Highway Department, supra,* the court said:

"While two witnesses for the condemnor testified in the instant case that the condemnee's remaining property would be benefited by the construction of the expressway on that portion of the condemnee's property taken, neither of these witnesses testified specifically as to the amount of enhancement in value or even the percentage of increase in the value of the property. * * *, the testimony in this case was insufficient to authorize a charge on consequential benefits, since there must be specific evidence as to the consequential benefits from which the jury could reasonably estimate the amount of improvement before they could deduct it from the consequential damages."

The necessity for evidence of the value of benefits, in addition to evidence that they were benefited, was clearly stated in *State Department of Highways* v. *Matise, supra,* where the court, on appeal refused to allow a setoff by virtue of benefits and said:

"* * * The State did not prove in this case what the increase in value was, but it is obvious from defendant's own witnesses that there was such an increase. A compelling piece of evidence in this regard, is that 58 of the 59 property owners involved in this widening and hardsurfacing project donated the necessary land to the Highway Department, realizing that the benefits received would outweigh the value of the land donated.

Accordingly, having failed to prove the value of the special benefits to defendant's property, no amount will be offset. * * *."

In view of the foregoing, we hold that the court erred in giving the aforementioned instruction over the landowner's

objection that benefits could be offset only as they affected before and after values of the residue and that there had been no evidence thereof. For such error, the judgment must be reversed. In this connection, it should also be noted that inasmuch as the burden is on the landowner to prove his damages for the appropriation of his real estate, *Van Sickle* v. *Kokomo Water Works Co.* (1959), 239 Ind. 612, 158 N. E. 2d 460, *The Evansville & Crawfordsville R. R. Co.* v. *Miller* (1868), 30 Ind. 209, it logically follows that the burden of proving benefits and the value thereof is upon the condemnor. It has been so held in *State* v. *Vorhof-Duenke Co.* (Sup. Ct. of Mo. 1963), 366 S. W. 2d 329 and *State Highway Commission* v. *Rollins* (Sup. Ct. of Wyo. 1970), 471 P. 2d 324; and such is the viewpoint expressed in Nichols on Eminent Domain, Third Edition, § 8.6211 (15).

(3) Landowner next asserts that the trial court erred and abused its discretion in admitting certain evidence, on behalf of the state, of other sales of lands which he contends were too far distant from subject land, both as to time and location, to be fairly used as comparables.

(a) Claude Herriman, a witness for the landowner, was permitted to testify on cross-examination as to the price paid for 110 acres of sand and gravel land on Harding Street about fourteen years previously. The distance to Harding Street from subject land was not shown, but the objection was predicated upon time only, thus we are not concerned with the question of distance. The testimony was given September 18, 1969. The date of the "take" was February 16, 1960. Thus the sale offered as a comparable did not occur fourteen years prior to the "take" as indicated but rather four and one-half years prior thereto. Under the circumstances of this case, we do not consider this remote.

(b) The state was permitted, over objection, to introduce into evidence a real estate sale's contract entitled "Conditional

Sales Contract," evidencing a sale of land adjoining the subject real estate, four years prior to the "take." The objections were (1) that it was too remote in point of time, with which we do not agree under the circumstances of this case; (2) that there was no evidence that it was underlaiden with sand and gravel, and (3) that a conditional sales contract could not be representative of the fair cash market value. However, there had been evidence previously admitted showing that sand and gravel had been mined from adjacent land and other evidence from which it could be fairly inferred that the land offered as a comparable probably contained recoverable sand and gravel and that such probability would have been considered in arriving at the contract price. As to the landowner's third contention upon the issue of the admissibility of the contract, he has cited no authority. We would revert to Chief Justice Arterburn's statement in *Southern Indiana Gas & Electric Co.* v. *Gerhardt, supra,* that anything affecting the sale value is a proper matter for consideration in attempting to arrive at a "fair market value." There are no unusual terms in the contract that would render it unacceptable as an arms length transaction between willing participants. That the purchase price was payable in installments, with interest as provided, was a factor for the jury to take into account, but it did not disqualify the transaction as one for proper consideration. Upon this subject, it has been held that the sale, when otherwise admissible, need not be for cash and that the fact that a large portion of the consideration was given by way of a mortgage did not affect the competency of the evidence. *Forest Preserve District* v. *Barchard* (1920), 293 Ill. 556, 127 N. E. 878. Obviously the terms of an installment contract should be carefully considered by the trial judge, and it should be disallowed if it reflects considerations at such a variance with custom and usage that the jury could not be expected to relate them to a cash value. We see no error upon this assignment.

(c)  State's witness, Davidson, testified as an expert ap-

praiser, giving his opinion as to the value of the land taken and that there had been no damage to the residue. In qualifying, Mr. Davidson related a number of sales in the area that he had investigated and considered in forming his opinions. These extended over a substantial period of time—as many as five years prior and nine years subsquent to the "take." The landowner objected by reason of the remoteness in time and subsequently moved to have all of the witness' testimony relating to values affecting the subject property stricken, as based upon such data. In this regard, the landowner has failed to distinguish between evidence of sales of comparable property offered as substantive evidence of the value of the property to which the comparison relates and evidence of such sales given by an expert in account of the factual basis upon which he grounds his opinion. In respect to the latter, all data upon which he relied in the formation of his opinion is relevant and any lack of comparability is a matter to be considered in determining the weight to be given his opinion. This is analogous to the situation under consideration in *United States* v. *Delano Park Homes* (2d Cir. 1944), 146 F. 2d 473, wherein Judge Learned Hand, acknowledging that a sale under threat of condemnation would not be admissible as independent evidence, said "Be that as it may, it would be absurd to exclude a qualified expert's appraisal because he had considered such evidence; indeed he ought to consider it; it is part of the data on which his opinion should rest. It is just because he is an expert, and for that reason able to give its proper weight to all data, that he is allowed to appraise the property at all. No court has held, so far as we can find, that his opinion shall not be received because it is so based in part; and we should not follow its ruling, if there were one, unless we have no escape."

The landowner also disputed the admissibility of Mr. Davidson's valuation opinion upon the ground that there was no testimony that any of the transactions upon which he relied in forming his opinion involved land underlaiden with sand

and gravel. However this witness had expressed the opinion that the highest and best use for the subject land at the time of the "take" was for commercial and residential development speculation. The comparables upon which he predicated his opinions were also regarded by him to be land of the same highest and best use. The jury was entitled to consider his opinions, both as to the highest and best use for the subject land and as to its value, although his opinions did not agree with those of other witnesses.

(d) Landowner assigns error by the trial court for having required him, on cross-examination, to testify as to sales of materials made from the residue land subsequent to the date of the "take", asserting that matters occurring subsequent to the "take" were inadmissible upon the issue of value. His objection at the trial, however, was upon a different ground, i.e., that he should not be required to answer as to such sales, unless the time thereof be made specific. When error is assigned to the admission of evidence, the grounds for the objection presented on appeal must be the same as that urged upon the trial. *Tyler* v. *State* (1968), 250 Ind. 419, 422, 236 N. E. 2d 815, 816; *Rector* v. *State* (1971), 256 Ind. 634, 271 N. E. 2d 452, 454.

(e) The landowner has also asserted that the court erred in admitting testimony of changes in geological formation subsequent to the date of the "take." However, the record reveals that the testimony was that there had been no such change, only that certain geological knowledge had been obtained subsequent to the "take," and that such information had caused revisions to be made in the geological maps. This information was given only by way of explaining a map placed in evidence, and it did not bear upon subsequent events in any way affecting the valuation of the subject land.

(f) The landower also assigns error in the admission, over his objection of irrelevancy, of testimony concerning the supply of sand and gravel within a radius of thirty miles from

the center of Indianapolis. Inasmuch as the land in question was being presented for valuation as "sand and gravel" land, we do not agree that the testimony was irrelevant, although such information doubtlessly would have to be considered along with other evidence and considered in context before its relevancy could be ultimately determined. We see no abuse of discretion in its admission.

(g) Landowner assigns further error in the admission of testimony with respect to the sales price of another parcel of land located twenty-four to twenty-six miles from the subject real estate, the objection being predicated upon the excessive distance. He has cited us to *Northern Indiana Public Service Co.* v. *Darling et al.* (1958), 239 Ind. 237, 154 N. E. 2d 881, as authority for the proposition that evidence of comparable sales must be as to lands in the immediate neighborhood, but we think the case is not in point. As set forth under point 3(c) above, the testimony (Transcript p. 733) was not offerred as substantive evidence of the value of subject real estate but rather as data which he, as an expert in appraisals, had taken into account in arriving at his opinions, both as to the highest and best use to which subject land could be devoted and as to its market value as such. Secondly, were the testimony to be regarded as substantive evidence of a comparable sale, we could not say, under the circumstances of this case, that the sale was too remote, by reason of distance, to have relevance. The terms "similarly situated" and "immediate neighborhood" as used in *Northern Indiana Public Service Co.* v. *Darling et al., supra,* although having a clear connotation within the context of that case are, nevertheless, relative terms. The more commonplace the property, the easier it is to find two or more alike or nearly alike. Accordingly, a greater degree of similarity should be required, and the size of the geographic area encompassing the properties to be compared may properly be more restrictive, as an element of similarity. As the property under consideration becomes less commonplace, however, the area may properly be enlarged,

without losing what would logically be regarded as similarity. By way of example, the value of a five room single family dwelling house situated in a middle income suburban neighborhood of New York City may be identical to one situated in rural Indiana, but the disparity of other factors relevant to the housing market of the two areas and the availability of other like or nearly alike houses in the same communities render a comparison between the two, for valuation purposes, wholly illogical. On the other hand, accepting gold mines as rare, a valuation comparison, reasonable under the circumstances, might be made between mines, even of different sizes and productivity, although one be located in Colorado and the other in California. Practical considerations enter into such judgments that preclude establishing fixed rules and formulas. Of necessity, much discretion must vest in the trial judge in such matters.

Inasmuch as the retrial of this case undoubtedly will give rise to questions upon the admissibility of evidence of comparable sales, we offer the following excerpts for the guidance of the court and counsel:

"Thus, by way of summary, it has been held that evidence of sales of comparable properties may be offered under three conditions:

(a)  On direct examination of expert or lay witnesses, as independent substantive evidence of the value of the property to which the comparison relates;

(b)  On direct examination of the expert witness, to give an account of the factual basis upon which he founds his opinion on the issue of value of the real estate in controversy; or

(c)  On cross-examination of the expert witness to test his knowledge, experience and investigation and thus affect the weight to be given to his opinion."

"It must be remembered, however, that the comparison is made with lands which are similar to the land taken. Of course, only such parcels may be compared where the dissimilarities are reduced to a minimum and allowance is made for such dissimilarities. It is, therefore, imperative to consider such differences as may exist in the physical and

environmental conditions and a proper allowance made to cover any differential that may exist by virtue of the difference in the time of the sales. It is evident that there may be considerable difference in the size, shape, situation, and immediate surroundings of two estates, and perhaps in other respects, and yet the price which one brought may be of substantial assistance in determining the value of the other. There may be general considerations applicable to both which largely affect their value and render it proper that the price paid for one should be considered in arriving at the value of the other, notwithstanding the differences between them."

"When evidence of the price paid at a voluntary sale of other land is offered by one of the parties at the trial of a land damage case, as tending to prove the value of the land taken or damaged, the admissibility of such evidence depends upon the decision on the question whether such other land is sufficiently like the land in controversy and the sale sufficiently near in point of time to make the evidence of the price paid helpful to the jury. This question is a preliminary question of fact, to be determined by the judge presiding at the trial, and his decision upon such a question will not be set aside if there is any evidence to support it. It follows that the admissibility of evidence of sales of other land, as stated above, is largely within the discretion of the trial court, and the verdict of the jury will not be set aside by a higher tribunal merely because it disagrees with his conclusion. The discretion of the trial court is not, however, unlimited, and if evidence of sales which was admissible as a matter of law is excluded, or evidence of sales which was inadmissible as a matter of law is admitted, the verdict will be set aside upon exceptions properly taken. In a doubtful case, the court may admit the evidence and charge that it be disregarded unless the jury finds sufficient similarity.

It has been stated that if properties are reasonably similar, and a qualified expert is of the opinion that the price brought by one either affects or tends to show the value of the other, it is better to leave the dissimilarities to examination and cross-examination than to exclude the testimony. It is incumbent on the party offering proof of other sales to show the facts which establish similarity."

"On the other hand, when the value of land depends upon its productiveness, similarity in the character of the soil is more important than proximity, and evidence of the price paid for land of the same physical character and which

would bear the same crop is admissible, though the land is situated in another town. The court, too, should exercise its discretion in accordance with the necessities of the case, and if land is of a character not commonly bought and sold, should allow evidence of the sales of similar land to be admitted, though located several miles from the land taken."

"There is no fixed space of time within which sales must have taken place to be admissible, and much depends upon the circumstances of each case, the rapidity with which values in the neighborhood are changing, and the introduction of new facilities for transportation, new business enterprises or other improvements in the neighborhood in the interval between the sale and the taking. More latitude should be allowed when the movement of real estate in the neighborhood has been slow, and it is impossible to secure evidence of sales in the vicinity really close to the time of the taking. Who offers the evidence may also in some cases make a difference. If values are admittedly increasing, the owner might well be allowed to offer evidence of a sale of similar property several years before, to rebut a contention by the condemnor that his property was of less value at the time of the taking than the figure shown by the sale, and conversely, if the trial is after the taking, a like opportunity should be given the condemnor.

Although there is ample authority to the contrary, it has been said that, in view of the fact that there is no presumption from the fact that a certain condition exists, that such condition previously existed, evidence of sales made subsequent to the taking are not admissible unless made almost simultaneously with the taking.

However, it has been held that post-taking sales are admissible to prove the after-value of the remainder area. But where the sale price reflects an important enhancement of value because of the building of the project which has prompted the taking, the sale is not admissible." Nichols on Eminent Domain, Third Edition, §§ 21.3 (1), 21.3 (3), 21.31, 21.31 (1), 21.31 (2) and cases there cited.

(4)   Landowner's next assignment relates to the exclusion of his question, upon re-direct examination, asked of witness Robert Simpson, calling for the royalty paid under a sand and gravel lease previously mentioned upon cross-examination. He contends that he should have been permitted to go into the matter because the state had opened

it upon cross-examination. An examination of the record, however, does not reveal that any of the business details of the lease had been previously testified to. The lease had been mentioned only in that a particular parcel of land, concerning which the witness had testified, had been inarticulately referred to by counsel for the state as the "Standard Materials lease." This did not authorize an inquisition into the terms of such lease. A further basis for the assignment is that the objection was sustained without the grounds therefor having been stated. Counsel cities good authority for the proposition that an objecting party must state specific grounds of objection to the trial court when the evidence is offered. This, unquestionably, is the rule if the objecting party desires to preserve the error of exclusion for review upon appeal. It does not follow therefrom, however, that a trial judge must admit improper evidence, unless a timely and proper objection thereto is made. Additionally, error by way of excluding evidence from one's own witness may be preserved for review, only by making an offer to prove, which was not done in this instance. *Public Service Commission of Indiana* v. *Indianapolis Railways, Inc.* (1947), 225 Ind. 656, 76 N. E. 2d 841.

(5)   The next assignment relates to the exclusion of testimony concerning the price paid for sand and gravel. The evidence was properly excluded for the reasons hereinbefore discussed under issue number (1). The question did not relate to the value of the land or the sand and gravel therein, as it lay, but rather to the price of such materials from any source. Further, no offer to prove was made.

(6)   Robert Selles testified as an expert upon real estate values and gave his valuation based upon the appraisal that he had made. Upon cross-examination, he acknowledged that his appraisal had included an analysis of potential income from the mining of sand and gravel from the subject real estate, but that he did not consider the income analysis as being valid, because it was too speculative and that he had disregarded it in favor of the "market data" ap-

proach, which he considered, under the circumstances of this case, to be much more reliable. Thereupon, he was asked, upon cross-examination, to state the valuation he had arrived at by the "income method." The court sustained the state's objection. The landowner assigns error in this regard, alleging that the court thereby effectively denied him his right to cross-examine the witness upon a subject which was an element in the proof to determine the market value. The scope of cross-examination lies largely within the discretion of the court, and there can be a reversal only for gross error or abuse of discretion. *Payne* v. *State* (1970), 254 Ind. 100, 257 N. E. 2d 818; *Polson* v. *State* (1965), 246 Ind. 674, 207 N. E. 2d 638. The witness, having testified that he did not consider the valuation sought as reliable and that accordingly he did not rely upon it, we find no error in the trial judge's ruling precluding such valuation from going before the jury. We cannot say that the ruling upon this one question cut off or precluded proper cross-examination, and the continued cross-examination of this witness at great length, as disclosed by the record, indicates that it did not.

(7) The landowner next asserts that the trial court erred in permitting the state's attorney to cross-examine him concerning the extent of his other real estate holdings, charging that such cross-examination had no bearing upon the issue of the case but was designed to, and in fact did, prejudice the jury against him by reason of his wealth. The landowner had testified as to the highest and best use of his land and as to its value. The state was entitled to cross-examine to ascertain the extent of his knowledge and the likelihood of his personal interest in the subject matter affecting his testimony. We cannot categorically say that the jury would be prejudiced against him if his testimony disclosed him to be a man of wealth, and we cannot agree, as charged by him, that the amount of damages awarded established such prejudice. As previously stated, the scope of cross-examination lies largely within the discretion of the trial judge. *Payne* v. *State, supra;*

*Polson* v. *State, supra.* We cannot say the trial court erred in this regard.

(8) State's witness, Sells, who had appraised the subject property and testified as to its value and the landowner's damages, was asked upon cross-examination if he had, at any time, made a statement that the sand and gravel land (a portion of subject real estate) itself was worth $599,050.00, to which the witness answered, "No." Thereupon, the landowner offered for impeachment, four pages of a thirty-six page appraisal report relative to subject real estate and which the witness had previously prepared for the state. The pages tendered reflected the witness' "income analysis" of a portion of subject property and was largely based upon hypotheticals. Although the conclusion from the analysis was that the sand and gravel land had a value of $599,050.00, such was not the witness' ultimate appraisal of the real estate. It was not, in any sense a statement of fact or ultimate opinion. From the witness' other testimony and from the entire appraisal report, it was clear that the witness had rejected the "income analysis" method of appraisal in this case, because he regarded it as too speculative, thus the evidence offered would not have been impeaching and its exclusion was harmless.

With respect to this assignment, it must also be noted that there had been no proper foundation laid for an impeachment. The case law of this state requires that in order to impeach a witness by showing his prior contradictory statements, a foundation must be first laid by calling his attention to the time when, the place where and the person to whom the contradictory statement is alleged to have been made. *Joy* v. *The State* (1860), 14 Ind. 139; *Bennett* v. *O'Byrne and Another* (1864), 23 Ind. 604; *Hill et al.* v. *Gust, by his next friend, Gust* (1876), 55 Ind. 45; *McIlvain* v. *The State, ex rel. Emery* (1881), 80 Ind. 69; *Roller et al.* v. *Kling et al.* (1898), 150 Ind. 159, 49 N. E. 948; *Miller* v. *State* (1915), 183 Ind. 319, 109 N. E. 205; *Skaggs* v. *The City of Martinsville* (1894), 140 Ind. 476, 39 N. E. 241. We have

held rather strictly to such formula in the past and today would accept, as a proper foundation, any question framed in such a manner as would adequately call the alleged utterance to the attention of the witness sufficiently to enable him to recollect the same, if recallable. The purpose of the foundation is to give warning to the witness to enable him to prepare to disprove it or to *explain it away, if admitted.* (Emphasis ours.) Wigmore on Evidence, Chadbourn Revision (1970), § 1029. The attempted foundation by the landowner here was merely to ask the witness if he had ever made a statement that the land was worth $559,050.00. This could not be held adequate to call the witness' attention to his appraisal report, let alone the particular section thereof where the figure appeared. If it had done so, the witness unquestionably would have had no difficulty in giving a satisfactory and unimpeaching explanation. The utterance was offered out of context. The impeachment, if completed would have been misleading to the jury, and the trial judge properly excluded it.

(9)   Landowner next assigns the refusal of the trial court to accept into evidence a proposed lease executed three years before the "take" by Standard Materials, a sand and gravel mining company, which was an offer to lease a portion of subject land for sand and gravel mining and to pay a minimum of $6,000.00 per acre for anything (sand, gravel or earth) taken out of or off the premises. The offer was rejected by the landowner. We are aware that a few other jurisdictions have, under circumstances where there was no better evidence offered, accepted evidence of bona fide offers under rigid standards. *The City of Chicago* v. *Lehmann* (1914), 262 Ill. 468, 104 N. E. 829. Pennsylvania has admitted evidence of offers, although not the amount thereof, to show desirability and marketability. *Whitcomb* v. *City of Philadelphia* (1919), 264 Pa. 277, 107 A. 765; *Kelly* v. *Redevelopment Authority of Allegheny County* (1962), 407 Pa. 415, 180 A. 2d 39. We have not previously admitted such evidence and, although not determinative upon the issues in that case, we indicated in *Marpo-*

*son et al.* v. *State of Indiana* (1972), 259 Ind. 426, 287 N. E. 2d 857, that we probably would not. The offer in issue here could not pass minimum standards for such evidence, even in those jurisdictions where such evidence is accepted. Even if the offer had been accepted, it would not have ripened into a contract that would have obligated the offeror to mine the ground or to pay anything to the lessor in the event that it did not. It would have imposed no obligation upon the offeror, until such time as it elected to exercise its rights thereunder. It was, therefore, more in the nature of an option than of a binding lease or sale.

(10) Expert witness, Sells, testified for the state as to the values. Upon cross-examination, it was revealed that in arriving at his conclusion as to damages to the residue, he had allowed for certain benefits derived by the residue from the improvements resulting from the condemnation project. Landowner moved to strike the witness' testimony as it related to after values " * * * for the reason that he has considered and used in determining such values the project itself, * * *." We see no error in the court's having overruled this motion. Landowner cites *State* v. *Sovich* (1969), 253 Ind. 224, 252 N. E. 2d 582 to support his motion, but that case involved a valuation of land taken, not the before and after value of the residue. This issue is determined by the same considerations discussed under assignments Nos. (2) and (3) (c) hereof and we see no error.

(11 & 12) Landowner's next assignments are general complaints concerning "irregularities" in the conduct of the state's counsel, "over-indulgence" of the trial court in permitting the same and an isolated comment of the trial judge which he would have us construe as an adverse comment upon the testimony of one of his witnesses. A consideration of these assignments is not necessary in view of our holding.

(13) Interest upon the judgment was computed by the trial court at the rate of six percent per annum from the

date of the "take" to July 8, 1965 and at the rate of four percent per annum thereafter. Landowner contends that he was entitled to six percent interest for the entire period, inasmuch as that was the rate in effect at the time of the "take." The state, however, asserts that the Acts of 1965, ch. 344, § 1 (1968 Repl. Burns Ind. Stat. Anno. § 3-1707) which added the provision for four percent interest and became effective on July 8, 1965 governed the interest rate from and after that date. We agree. Authorities cited by landowner merely supports the position that his constitutional right to "just compensation" includes interest, as an essential element of such compensation, inasmuch as "just compensation" means that the owner should be put in as good position pecuniarily as he would have if his property had not been taken. *Schnull* v. *Indianapolis, etc. R. Co.* (1920), 190 Ind. 572, 131 N. E. 51. This is not in dispute. He gives us no authority, however, to support his contention that the interest for the entire period payable must be computed upon the rate in effect upon the date of the "take." This appears to be a case of first impression in this state. A nearly identical case, however, is *In Re Bronx River Parkway, etc.* (1940), 248 N. Y. 48, 29 N. E. 2d 465, affirmed in *A. F. & G. Realty Corp.* v. *New York,* 313 U.S. 540, 61 S. Ct. 839, 85 L. Ed. 1508. In that case, the condemnation statute did not prescribe the interest to be paid but the lawful rate of interest at the time of the "take" was six percent, and that rate had theretofore been applied to awards in eminent domain cases, as meeting the constitutional requirement of "just compensation" in the absence of evidence as to what the additional sum should be for the delay in payment. Pending the final decree upon the award, the Legislature enacted a statute providing that the rate of interest upon judgments and accrued claims against municipal corporations could not exceed four percent per annum. It was held that this reduced rate was applicable to the award from and after the effective date of the statute, and that the six percent rate was applicable for the period from the date

of the "take" to the effective date of the statute. The origin of landowner's right to compensation is constitutional and statutory. It is not based upon the voluntary acts and agreements of the parties, and although the obligation of the condemnor to pay has sometimes been referred to an an implied contract, there is no contract to protect against impairment. *Crane, Administratrix* v. *Hahlo, et al.* (1922), 258 U.S. 142, 66 L. Ed. 514. We perceive of no reason why the Legislature may not prescribe the rate of interest to be paid upon condemnation awards and alter it from time to time so long as it is not so unreasonably low as to be a deprivation of "just compensation." We hold the trial judge's method of computing the interest payable upon the award to be correct.

(14)    Landowner next requests that we review the evidence to determine if the award was adequate in view thereof and we are authorized and required to substitute our judgment thereof for that of the jury, in view of Trial Rule 59 (A) (3). In view of our reversal upon other grounds, this issue is moot.

The judgment of the trial court is reversed and a new trial ordered upon the issue of damages.

Arterburn, C.J., DeBruler, Hunter, JJ., concur; Givan, J., not participating.

NOTE.—Reported in 300 N. E. 2d 67.