ANGLIN & STEVENSON et al. v. UNITED STATES et al.

No. 3410.

Circuit Court of Appeals, Tenth Circuit.

March 21, 1947.

Writ of Certiorari Denied June 2, 1947.

See 67 S.Ct. 1514.

Joseph C. Stone, of Muskogee (Charles A. Moon, of Muskogee, on the brief), for appellants.

Fred W. Smith, of Washington, D.C. (David L. Bazelon, of Washington, D. C., Cleon A. Summers, of Muskogee, Okl., and Roger P. Marquis, of Washington, D. C., on the brief), for appellees.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The sole question presented by this appeal is whether interest is chargeable on a judgment against the United States as guardian for full-blood restricted Indian heirs, payable out of restricted funds belonging to the Indians in the custody of the Secretary of the Interior.

In Scott v. Beams, 122 F.2d 777, certiorari denied 315 U. S. 809, 62 S.Ct. 795, 86 L.Ed. 1209, we sustained the trial court's decree determining heirship and settling the Estate of Jackson Barnett, a full-blood Creek Indian, who died seized of a restricted estate in the custody and control of the Secretary of the Interior, having a net value of more than one million dollars. See also Brady v. Beams, 10 Cir., 132 F.2d 985. In United States v. Anglin & Stevenson et al. 145 F.2d 622, we sustained the supplemental decree of the trial court awarding attorney fees and expenses to the attorneys for the successful heirs to the Estate and ordering the same paid out of the distributive shares of such claimants. The supplemental decree, entered June 23, 1943, was silent with respect to interest, as was the mandate of affirmance, and when the fees and expenses were paid into the registry of the court in satisfaction of the judgment, no interest was included. Under the order of disbursement entered by the trial court, the respective attorneys were allowed to accept the sum ordered paid without prejudice to their right to claim interest thereon from June 23, 1943 until the date of payment, the court reserving jurisdiction for the purpose of hearing and determining all matters incident or ancillary to the case.

The attorneys applied the disbursements first to the payment of interest, then to the principal, and thereafter made formal demand upon the Secretary for the balance claimed, representing 6% interest on the judgment from the date of rendition until payment. Acting under the advice of the

Attorney General, the Secretary denied the claim, stating that since the payments were made without prejudice to the claim for interest, and since the trial court had reserved jurisdiction, the question was one for the decision of the trial court. Accordingly, the attorneys made formal application in the original proceedings for the allowance of interest. The trial court denied the claim on the grounds (1) that the judgment was against the United States, and interest was therefore not recoverable in the absence of explicit authority; and (2) if the Court had known that interest would be claimed, he would have "probably lessened the amount" of the original judgment.

On appeal from that order, the attorneys invoke Rule 25 of this Court which provides: "In cases where the judgment or decree of the inferior court is affirmed, interest thereon shall be calculated and levied from the date of the judgment or decree until the same is paid, at the same rate that similar judgments and decrees bear interest in the courts of the state where such judgment was rendered * * *." It is said that this Rule having the force of law, operated as a mandate to the trial court to calculate the interest at the legal rate of 6% per annum from June 23, 1943 until date of payment, and to include the same as a part of the affirmed judgment. We are asked to so construe our mandate, and to direct the payment of interest as a part of the judgment in accordance with the Rule.

█ The Rule is in harmony with the related statute, 28 U.S.C.A. § 811, and has the force of law. Weil v. Neary, 278 U.S. 160, 169, 49 S.Ct. 144, 73 L.Ed. 243, and cases cited; Perkins v. Fourniquet, 14 How. 328, 55 U.S. 328, 14 L.Ed. 441; Schell v. Cochran, 107 U.S. 625, 2 S.Ct. 827, 27 L.Ed. 543. It thus operates to automatically and mandatorily impose the legal rate of interest upon a judgment from the date of its rendition until paid. Blair v. Durham, 6 Cir., 139 F.2d 260; Huntley v. Southern Oregon Sales, 9 Cir., 104 F.2d 153; Amis v. Smith, 16 Pet. 303, 41 U.S. 303, 10 L.Ed. 973. But the Rule has no application to judgments or decrees against the United States, unless it has expressly consented to waive its traditional immunity therefrom. "In other words, in the absence of constitutional requirements, interest can be recovered against the United States only if express consent to such a recovery has been given by Congress. * * * The consent necessary to waive the traditional immunity must be express, and it must be strictly construed." United States v. N. Y. Rayon Importing Co., U.S. 67 S.Ct. 601, 603. See also United States v. The Thayer-West Point Hotel Co., U.S., 67 S.Ct. 398; United States v. Goltra, 312 U.S. 203, 61 S.Ct. 487, 85 L.Ed. 776; Reed v. Howbert, 10 Cir., 77 F.2d 227; Huntley v. Southern Oregon Sales, supra. It follows that if this judgment is against the United States, Rule 25 has no application here, and the trial court should be affirmed.

Without challenging the Government's immunity from interest on judgments against it, appellants contend that the judgment involved here is not against the United States within the meaning and purpose of the rule of immunity. It is suggested that the judgment is not a charge against any public funds; that the United States has no pecuniary interest in the controversy, but appeared merely in a representative capacity as a stakeholder until the heirs were judicially determined; that the reason for the rule of immunity does not obtain, and should not therefore apply in this case.

█ It is true, as appellants contend, that the United States originally appeared in this case as an intervenor, and that its avowed interest in the controversy was that of a stakeholder. Its position throughout the litigation to determine heirship was one of "strict neutrality." When, however, the rightful heirs had once been judicially determined, the Secretary automatically became their guardian, with exclusive custody and control of their restricted inheritance. At that stage of the proceedings, the Government's stake in the lawsuit was converted from one of neutrality to an interest consistent with its duties as guardian of its restricted Indian wards. In furtherance of that governmental interest, the United States challenged the equitable jurisdiction of the court to award attorney fees to the attorneys for the successful claimants, to be paid out of the funds, contending that

since they were restricted, it had exclusive control over them.

We recognized the restricted character of the funds and that the Secretary held the same as guardian of his Indian wards in a sovereign capacity. United States v. Anglin & Stevenson, supra, 145 F.2d at page 628. We held, however, that equitable jurisdiction to determine heirship and settle the estate carried with it as a necessary incident the power to award reasonable attorney fees and expenses to the attorneys for the successful heirs. In so holding, we pointed out that when the court acquired jurisdiction over the subject matter on petition of the United States under Section 3 of the Act of April 12, 1926, 44 Stat. 240, it was thus empowered to hear and determine all matters involved in the suit and enter a judgment binding upon the United States "to the same extent as though no Indian lands were involved." See also Cæsar v. Burgess, 10 Cir., 103 F.2d 503. And that the Government having thus expressly given its consent to be bound by the judgment, it could not stop the equitable processes short of final adjudication—that the determination of heirship and the award of attorney fees was one continuous litigatory process.

But, consent of the United States to be bound by a judgment does not amount to an express consent that such judgment shall bear interest. When the judgment was entered and became final, the equitable jurisdiction of the court was exhausted. The imposition of interest on the judgment was not a part of the equitable process to which the Government expressly consented to be bound. The final judgment was against the United States as custodian of restricted funds. It held these funds in trust for the Indian heirs in its sovereign capacity, and they thus became clothed with immunity from the exaction of interest. Ickes v. Ledbetter, 77 U.S. App. D. C. 358, 135 F.2d 658; Cf. Bramwell v. United States Fidelity & Guaranty Co., 9 Cir., 299 F. 705, affirmed 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368.

The rule of sovereign immunity from interest has been held inapplicable in a suit against the alien property custodian under the Trading with the Enemy Act, 50 U.S.

C.A. Appendix, § 1 et seq. Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265. In that case, interest was awarded as a part of the damages assessed for breach of a contract. The court held that although the suit was against the Government, the claim was not against it, and the sovereign immunity from interest did not therefore apply. But, unlike our situation, the interest was allowed as a part of the adjudicatory process. It was not allowed or claimed on the judgment as we are asked to do here. The cases are thus plainly distinguishable.

We conclude that the judgment is against the United States, and that interest thereon is not chargeable.

The judgment is affirmed.