**Gary D. THOMPSON, Appellant-Plaintiff,**

**v.**

**STATE of Indiana, Appellee-Defendant.**

**No. 1–1080A291.**

Court of Appeals of Indiana,
First District.

Aug. 19, 1981.

Rehearing Denied Sept. 25, 1981.

C. Richard Marshall, Robert L. Stevenson, Stevenson & Marshall, Columbus, Tom G. Jones, Jones & Loveall, Franklin, for appellant-plaintiff.

Linley E. Pearson, Atty. Gen., Robert S. Spear, Deputy Atty. Gen., Indianapolis, for appellee-defendant.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Gary D. Thompson appeals the Johnson Circuit Court's overruling of his Motion for Order and Judgment Compelling Payment by Defendant of Interest Upon Judgment. We affirm.

## STATEMENT OF THE FACTS

Thompson, who sustained injuries in 1973, obtained a $1.24 million tort judgment against the State of Indiana in July 1976. The state unsuccessfully appealed that judgment, and the Indiana Supreme Court denied transfer on October 9, 1979. *See State v. Thompson*, (1979) Ind.App., 385 N.E.2d 198, *trans. denied.* On November 5, 1979, the state paid the principal amount of the judgment into court. Thompson filed his Motion for Order and Judgment Compelling Payment by Defendant of Interest Upon Judgment which the trial court overruled on February 6, 1980.

## ISSUES

I. Is subsection 17 of Acts 1974, P.L. 1942, § 1, pp. 602–603 ambiguous?

II. Does the denial of interest in this case permit an unconstitutional taking of Thompson's property by the state without just compensation and thus constitute denial of due process of law?

III. Does the denial of interest pending the state's appeal of Thompson's favorable tort judgment amount to a denial of equal protection of the law?

IV. Is Ind.Code 34–4–16.5–17 a special law resulting in the granting of privileges and immunities to certain classes of citizens such as is prohibited by the Indiana Constitution?

## DISCUSSION AND DECISION

*Issue One—Ambiguity of the Statute*

On February 19, 1974, the Indiana Tort Claims Act (the Act), Ind.Code 34–4–16.5–1 *et seq.*, became effective. Subsection 17, concerning interest which may be obtained on judgments rendered against a governmental entity, read as follows:

"A claim or suit settled by, or a judgment rendered against, a governmental entity shall be paid by it not later than one hundred eighty (180) days after settlement or judgment, unless there is an appeal, in which case not later than one hundred eighty (180) days after a final decision is rendered. If payment is not made within one hundred eighty (180) days, the governmental entity is liable for interest from the date of settlement or judgment at an annual rate of eight percent (8%)."

Acts 1974, P.L. 142, § 1, pp. 602–603.

On March 3, 1980, IC 34–4–16.5–17 was amended:

"SECTION 1. IC 34–4–16.5–17 is amended to read as follows: Sec. 17. A claim or suit settled by, or a judgment rendered against, a governmental entity shall be paid by it not later than one hundred eighty (180) days after the date of settlement or judgment, unless there is an appeal, in which case not later than one hundred eighty (180) days after a final decision is rendered. If payment is not made within one hundred eighty (180) days after the date of settlement or judgment, the govermental entity is liable for interest from the date of settlement or judgment at an annual rate of eight percent (8%). The governmental entity is liable for interest at that rate and from that date even if the case is appealed, provided the original judgment is upheld.

"SECTION 2. (a) Notwithstanding the conflicting provisions of IC 34–4–16.-5–17, for any case on appeal on the effective date of this act upon which a final decision has not been rendered or a final settlement has not been reached, any interest required to be paid by IC 34–4–16.-5–17 accrues and accumulates only from the effective date of this act.

(b) Because an emergency exists, this act takes effect upon passage."

Acts 1980, P.L. 198, p. 1630.

Thompson contends that the second sentence of the 1974 version of subsection 17 of the Act is patently ambiguous and should be interpreted to allow eight percent interest upon his judgment from the date thereof even though an appeal had been taken. The state argues correctly we believe, that this question has already been decided adversely to Thompson by the interpretation of the statute given by this court in *Speidel v. State,* (1979) Ind.App., 386 N.E.2d 180, *trans. denied, Glick v. Department of Commerce,* (1979) Ind.App., 387 N.E.2d 74, *trans. denied,* and *Holt v. City of Bloomington,* (1979) Ind.App., 391 N.E.2d 829, *trans. denied.* In all three of these cases, this court found the "final decision" language of the statute to be unambiguous. In *Speidel,* the "final decision" was held to be the denial of transfer by the supreme court. In *Glick,* it was the appellate court's decision because no further petitions were filed; Judge Lybrook implicitly dismissed the idea of ambiguity in the statute at 387 N.E.2d 77:

"Although the trial court rendered judgment in the original action on September 28, 1976, the State appealed the

case to the Indiana Court of Appeals. Thereafter, the appeal was exhausted when this court affirmed the trial court's decision on February 13, 1978, since procedures for rehearing and transfer were never instituted.

"Statutes are to be construed to give effect to the ordinary and plain meaning of the words used. If the intent of a statute is unmistakable and its meaning so plain and unambiguous that there is no room for judicial construction, we will adopt the meaning plainly expressed. *Bowen v. Review Board of Indiana Employment Security Division* (1977), Ind. App., 362 N.E.2d 1178.

"Clearly, there is no need for judicial construction here, where the statute provides that the 180-day period begins to run at the date of settlement or judgment 'unless there is an appeal, in which case not later than one hundred eighty [180] days after a final decision is rendered.'

"The Court of Appeals rendered its judgment on February 13, 1978, and since no petition for rehearing was filed thereon, the Court of Appeals judgment was the 'final decision' from which the 180-day period would run. The State paid the judgment principal plus costs to the Bartholomew County Clerk on April 5, 1978, well within the time period allowed, and therefore was not liable for any interest under the statute."

In *Holt*, the court faced squarely the question of ambiguity, and Judge Garrard unequivocally rejected the same charge as Thompson's:

"If the General Assembly had intended to equate 'final decision' with 'judgment,' it would not have used both those terms in the same section. Furthermore, if those terms were synonymous, the exception in the first sentence of IC 34–4–16.5–17 [footnote omitted] would be totally redundant. . . .

. . . .

"The General Assembly has expressed itself unambiguously and with sufficient clarity."

391 N.E.2d at 832–33.

 Furthermore, from the language of Acts 1980, P.L. 198, § 2(a), p. 1630, it is clear that the amendment permitting interest to accrue from the date of judgment was not intended to apply retroactively. We must reject Thompson's argument that the 1974 version of the statute contained a drafting error which the legislature corrected in 1980. Thus, Thompson, as a tort judgment creditor of the state, would be entitled to collect interest on his judgment entered on July 20, 1976, only if the state had failed to pay the judgment within one hundred and eighty days after transfer was denied by our supreme court on October 9, 1979. Because the state paid the entire amount of the judgment into court on November 5, 1979, the trial court properly decided under the statute that Thompson was not entitled to interest.

*Issue Two—Due Process, Unjust Compensation*

Thompson contends that denial of interest on his $1.24 million judgment against the state pursuant to Ind.Code 34–4–16.5–17 for almost forty months involved in the state's appeal of this case constituted a taking of his property without just compensation which is forbidden by both the Fourteenth Amendment of the United States Constitution[1] and Article I, Section 21 of the Indiana Constitution.[2] The reasoning on which he builds his argument is based on analogy with law in eminent domain cases and can be outlined in the following manner:

1. A judgment obtained in a tort action against the state is a vested property right. *State v. Daley, Admx.*, (1975) 165 Ind.App. 513, 332 N.E.2d 845.

1. U.S.Const. amend. XIV, § 1: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law. . . ."

2. Ind.Const. art. I, § 21: "No man's property shall be taken by law, without just compensation. . . ."

2. Both the Federal and Indiana Constitutions preclude the taking of private property or even the interference with a property right for public benefit without just compensation. *Schnull v. Indianapolis Union R. Co.*, (1921) 190 Ind. 572, 131 N.E. 51.

3. One of the elements of just compensation is interest. *State v. Stabb*, (1948) 226 Ind. 319, 79 N.E.2d 392.

4. The legislature may prescribe and alter the rate of interest to be paid in condemnation awards so long as the interest they set is not so unreasonably low as to amount to a deprivation of just compensation. *Gradison v. State*, (1973) 260 Ind. 688, 300 N.E.2d 67. Thompson asserts that awards of interest in tort judgments obtained against the state are constitutionally mandated by the same language which mandates interest in condemnation awards.

█ Thompson's facially appealing argument is fatally flawed in several respects. First, he fails to distinguish between prejudgment interest (interest *qua* damages) and post-judgment interest (interest *eo nomine*). *See* Note, *Interest on Verdicts and Judgments in State and Federal Courts*, 38 Notre Dame Law. (1962). Second, he ignores the distinct historical developments with respect to both types of interest in eminent domain, contract, and tort cases. *See* Annot., "Retrospective application and effect of statutory provisions for interest on changed rate of interest," 4 A.L.R.2d 932 (1949). Finally, he blithely dismisses the historical context of the legislation in question in two sentences and confines his discussion of the legislative history of Acts 1974, P.L. 42, § 1, pp. 602–603 to allegations of a drafting error based upon an affidavit of one of the co-authors of the bill.

We note that the cases which Thompson cites in support of his "just compensation—due process" arguments are almost exclusively eminent domain cases which treat interest as a part of the issue of damages. For example, Thompson cites us to *Morton Grove Park District v. American National Bank and Trust Co.*, (1980) 78 Ill.2d 353, 35 Ill.Dec. 767, 399 N.E.2d 1295, in support of his position that he, in fact, had a vested property right in his $1.24 million judgment because the actual funds for payment of his claim were already appropriated by the General Assembly in Acts 1974, P.L. 142, § 2, p. 603 [3] and that the state, therefore, took the use of his money for the public's benefit during the three years pending appeal. We find *Morton Grove* inapposite to the case at bar for several reasons. First, it is an eminent domain case in which interest is traditionally viewed as part of the measure of damages to be paid from the date of the taking, not just from the date of judgment. The trial court there, however, vested possession of the real estate in the condemnor as of the date of judgment. Second, it involves two specific Illinois statutes, unlike any involved in the case at bar. One provides that the condemnees' award is to be deposited by the condemnor with the county treasurer pending an appeal. Another requires that all earnings on investment by the county treasurer are to accrue to the benefit of the county to be used for county purposes. The court's decision to award the condemnees the precise amount of interest which the county actually earned on the specific funds which were paid over to the treasurer in the name of the condemnees turned on the fact that the funds specifically belonged to the condemnees. The court construed the statutory language requiring the earnings on investments of county moneys "to whomsoever belonging" to be used for county purposes as not referring to the private property of the condemnees and thus found the statute did not

---

3. "Section 2. There is hereby appropriated from the general fund of this state sufficient funds to settle claims and to satisfy tort judgments which have been or will be obtained against the State of Indiana and to pay expenses authorized by this Act, including liability insurance premiums, interest on said claims and judgments and expenses incurred by the attorney general in employing other counsel to aid in defending or settling claims or civil actions against the state. The attorney general shall have the authority and duty to present vouchers for the preceding items or expenses to the auditor of the state, who shall issue warrants on the treasury for the amounts so presented."

apply to their award. This case is easily distinguishable from the case at bar for, as pointed out by Thompson himself, the $1.24 million dollars required to pay his award were not separated during appeal from the state's general fund for investment or any other purposes. Furthermore, the very section of the statute which Thompson cites in support of his argument that the funds were appropriated also provides that allocation of the appropriated funds for a specific claim does not occur until the attorney general presents a voucher to the auditor of the state who in turn issues a warrant to the treasury. (See footnote 3 above. One can foresee real problems in the calculation and payment of interest under this system if interest were permitted to accrue from the date of judgment until time of payment. *See e. g.*, 1947 Op. Att'y Gen. No. 10.) Thompson's argument that the state took the use of his specific property for public benefit based on the *Morton Grove* case must fail.

The issue in Thompson's case on the other hand, has to do with the right to recover interest upon a judgment, or interest *eo nomine*. Although it may be deemed a taking of private property without just compensation, hence unconstitutional, to deny a reasonable rate of interest in pre-judgment awards in eminent domain cases, *Schnull v. Indianapolis Union Ry. Co., supra*, such has never been the rule with respect to torts. Courts have traditionally allowed interest as an element of damages in tort actions only where the damages are fixed or definite and such additional damages are necessary to accomplish full compensation. *Ft. Wayne National Bank v. Scher*, (1981) Ind.App., 419 N.E.2d 1308, (trans. pending); 9 I.L.E. *Damages* § 49 (1971); 22 Am.Jur.2d *Damages* § 194 (1965).

The right to recover interest on judgments was not a feature of the common law, Note, *supra*, and in Indiana interest is said to be a "creature of statute." *Frazer v. Boss*, (1879) 66 Ind. 1, 17. From this it follows that the recovery of interest is not a constitutionally guaranteed right. 1947 Op. Ind. Att'y Gen. No. 10. Today, of course, interest is not viewed with the same disdain

as it was at the time of Henry VIII, *see Frazer v. Boss, supra*, and the recovery of post-judgment interest appears to be a common occurrence. Note, *supra*. We remind Thompson of the words of Justice Stewart that "[p]roperty interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, (1972) 408 U.S. 564, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548. While the cases which Thompson cites both from Indiana and from other jurisdictions in which interest was permitted upon tort judgments rendered against governmental entities may suggest a change in the common law, they do not bestow upon Thompson a vested property right to have interest accrue upon his judgment immediately upon entry thereof. In *Munn v. Illinois* the United States Supreme Court wrote in 1876:

"A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances."

94 U.S. 113, 134, 24 L.Ed. 77.

Placed in its historical context of time and circumstances, moreover, the issue of interest in this case cannot be properly reviewed apart from the doctrine of sovereign immunity. Although the common law doctrine of sovereign immunity in Indiana was virtually eliminated by our supreme court in *Campbell; Knotts v. State*, (1972) 259 Ind. 55, 284 N.E.2d 733, the court there

pointed out that problems resulting from the abolition of the doctrine with respect to the state's liability were questions for the legislature:

"The state argues that abolition of sovereign immunity will result in a great number of problems for the state.... The arguments which the state presents are questions which properly belong to the legislature in facing and solving the problems of liability."

at 284 N.E.2d 736. There is no question but that the traditional doctrine of sovereign immunity incorporated not only immunity from liability for torts, but also immunity from liability for interest. *See Anglin & Stevenson v. United States*, (10th Cir. 1947) 160 F.2d 670. As expressed by the United States Supreme Court: "[I]n the absence of constitutional requirements, interest can be recovered against the United States only if express consent to such a recovery has been given by Congress [or contract].... The consent necessary to waive the traditional immunity must be express, and it must be strictly construed." *United States v. N.Y. Rayon Importing Co.*, (1947) 329 U.S. 654, 658–59, 67 S.Ct. 601, 603–04, 91 L.Ed. 577, 581–82.

We note that the complete and total denial of interest to all tort judgment creditors of the state is not the real issue in the case at bar, because even under the statute in effect at the time of judgment Thompson was entitled to recover interest under certain specified conditions. The facts in this case are not such that prior to February 19, 1974, tort judgment creditors of the state were entitled to interest upon their judgments and immediately thereafter they were not. Rather, the facts are that prior to February 19, 1974, tort judgment creditors had been permitted interest upon their judgments from the date of their entry whereas after that date interest was permitted to accrue only from the date of the final decision on appeal.

Furthermore, the procedural aspect of the due process issue has already been determined contrary to Thompson's position in *Speidel v. State, supra, Glick v. Department of Commerce, supra*, and *Holt v. City of Bloomington, supra*, where this court reiterated that the 1974 version of Ind.Code 34–4–16.5–17 did not retroactively destroy a plaintiff's right to interest from the date of judgment inasmuch as any right plaintiffs had to interest thereon vested only as of the date of judgment. Perhaps because Thompson makes no distinction between procedural due process and substantive due process analyses [4] he fails to perceive these cases as determinative. Procedural due process analysis looks first to determine whether there is a constitutionally protected property or liberty interest which is the subject of state action. If there is only an expectancy interest and not a legitimate claim of entitlement to a benefit then a constitutionally ordained notice and hearing are not required before the state action effects a change in the expected benefit. *See Board of Regents of State Colleges v. Roth, supra; Perry v. Sindermann*, (1972) 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570. While most of Thompson's due process arguments are addressed to matters of a substantive due process nature, several statements suggest to violations of procedural due process as well. We put those arguments to rest here.

The thrust of Thompson's due process challenge to the constitutionality of Acts 1974, P.L. 142, § 1, pp. 602–603, must rest on the substantive aspects of the issue as he perceives it on page 91 of his Brief:

"Constitutional due process as applied here guarantees against arbitrary legislation, demanding that it shall not be unreasonable, arbitrary or capricious and that the requirements therein shall have a real and substantial relation to the purpose of the act."

Thompson, of course, finds the legislation to be arbitrary and capricious and to bear no

---

4. In fact, Thompson commingles all of his constitutional arguments under each issue throughout his brief. We have attempted to group them under appropriate issue headings in the interests of judicial economy and cogent analysis.

rational relationship to the purpose of the Act. We disagree.

Our standard of review in approaching questions as to the constitutionality of a statute was set forth by the Indiana Supreme Court in *Sidle v. Majors*, (1976) 264 Ind. 206, 341 N.E.2d 763, 766:

> "In approaching a consideration of the constitutionality of a statute, we must at all times exercise self restraint. Otherwise, under the guise of limiting the Legislature to its constitutional bounds, we are likely to exceed our own. That we have the last word only renders such restraint the more compelling. We, therefore, remind ourselves that in our role as guardian of the constitution, we are nevertheless a court and not a 'supreme legislature.' We have no right to substitute our convictions as to the desirability or wisdom of legislation for those of our elected representatives. We are under a constitutional mandate to limit the General Assembly to its lawful territory of prohibiting legislation which, although enacted under the claim of a valid exercise of the police power, is unreasonable and oppressive. Nevertheless, we recognize that the Legislature is vested with a wide latitude of discretion in determining public policy. Therefore, every statute stands before us clothed with the presumption of constitutionality, and such presumption continues until clearly overcome by a showing to the contrary."

Furthermore, "[b]efore a statute will be declared repugnant to the Constitutions its fatal constitutional defects must be clearly apparent." *Johnson v. St. Vincent Hospital, Inc.*, (1980) Ind., 404 N.E.2d 585, 591. Merely declaring that one can perceive no rational basis for the legislation as Thompson does here does not mean that there is none.

It is true that legislative history in Indiana is difficult to reconstruct, and legislative intent, if not apparent from the face of the statute itself, is frequently the result of educated conjecture and surmise. In *Campbell v. State, supra*, the court acknowledged specific concerns of the state if sovereign immunity were to be abandoned *in toto*, and legal scholars since the inception of the doctrine have argued its pros and cons. *See, e. g.,* Note, *Tort Liability of the State of Indiana: Perkins v. State*, 46 Ind.L.J. 544 (1971); Note, *Sovereign Immunity in Indiana—Requiem?* 6 Ind.L.Rev. 92 (1972). One of the most persistent concerns raised in support of the doctrine of sovereign immunity is the specter of depletion of the public treasury to the point where the normal functioning of government could be jeopardized. The matter of fiscal responsibility, that is, of raising and distributing revenues, is charged by Article 10 of the Indiana Constitution to the legislature. We conclude then that the object of the Tort Claims Act, and more specifically of subsection 17, is to protect the fiscal integrity of governmental entities by limiting their liability not only for damages in tort, but also for the interest recoverable upon these damages. We have already determined that such action was not constitutionally precluded, and we conclude now that it was reasonable and prudent for them to do so.

We may take judicial notice of shrinking surpluses in public treasuries as well as of the imminence of bankruptcy faced by some of the large municipal corporations throughout the country. One of the objectives in providing a governmental entity with almost six months from the date of the final determination within which to pay a judgment without interest has to be to give that entity time in which to appropriate the amount of the judgment or to raise it by some other means.[5] It is reasonable to

---

5. For example, Ind.Code 34–4–16.4–1 (Burns Code Ed., Supp. 1980) sets out the methods by which a city or county will approach payment of judgments rendered against them:

> "(a) A judgment against a county or city may be enforced only from appropriations made for that purpose.

> (b) The proper officers of the county or city may be compelled by mandamus proceedings to make the necessary provisions for appropriating, levying, and collecting by taxation the sum necessary for the payment of a judgment. In the mandamus proceedings:

assume that it might take somewhat longer for a governmental entity to raise the larger amounts of money that could be recovered against it in causes of action which had accrued prior to the enactment of the Tort Claims Act and during such time as the doctrine of sovereign immunity was in a state of flux than after the payment mechanisms established by the Act became effective.[6] Many governmental entities other than the state would need time to procure insurance and could have suffered significant cash flow adversities in the interim had unlimited damage and interest liabilities been permitted. There is, therefore, a real and substantial relationship between the requirement of the Act, *i. e.,* the putting off of the recovery of potentially large amounts of interest for a significant period of time, and the purpose of the Act, *i. e.,* preservation of the fiscal integrity of governmental entities.

Thompson has failed to convince us either that he was entitled to interest under the statute or that his right to recover interest upon announcement of the judgment was vested such that interference therewith by the legislature constituted a taking of that award without compensation. Because there was no taking there could be no denial of procedural due process. Because the object of the legislation was reasonable and the means chosen to effect the legislative intent were substantially related thereto, the statute does not unconstitutionally deny Thompson substantive due process of law.

*Issue Three—Equal Protection*

Thompson sets out an array of interest statutes involving judgment creditors of the state which provide for various interest rates and starting dates from which interest accrues: *e. g.,* Ind.Code 34–2–22–1 states that where a money judgment is recovered against the state, interest at six percent per year shall attach beginning with the forty-fifth day after judgment; Ind.Code 32–11–1–8 provides that in an exception to an appraiser's report in an eminent domain case interest may be recovered at eight percent per annum on the amount of damages from the date the governmental entity takes possession of the property, provided, however, that the landowner may recover no interest if he is entitled to withdraw the funds and use or invest them; Ind.Code 34–4–16–6 allows interest at six percent per year upon a judgment rendered against the state by the Superior Court of Marion County or the supreme court "from the date of the adjournment of the next ensuing session of the general assembly" until the judgment is paid.[7] Thompson declares that since all judgment creditors of the state are "similarly situated" they should all be treated alike and that, because they are not, the entire legislative scheme is unconstitutional.

■ The state points out that interest is purely a legislative matter and that as long as the statutory classifications have a reasonable basis, they will not be held to violate equal protection. We agree. The state further · argues that the equal protection question has already been decided adversely to Thompson in *Holt v. City of Bloomington,* (1979) Ind.App., 391 N.E.2d 829.

Although the equal protection question was addressed by this court in *Holt,* Thompson is correct in asserting that the specific

(1) The respective bodies and officers may be sued collectively by their legal names;
(2) Service of process may be made on any member of the respective bodies; and
(3) All members of the respective bodies are bound by the judgment.
(c) If a city is entitled to an appeal, the appeal shall be granted without bond. A judgment against a city may not be enforced pending an appeal. [IC 34–4–16.4–1, as added by Acts 1980, P.L. 8, § 170.]"
Ind.Const. Article 10 § 3 states: "No money shall be drawn from the Treasury, but in pursuance of appropriations made by law." *See also,* footnote 3, *supra.*

6. We point Thompson to some of the documented logistics problems which the state faced after *Perkins v. State,* (1969) 252 Ind. 549, 251 N.E.2d 30 and prior to enactment of the Tort Claims Act in footnote 35, Note, 46 Ind.L.J. 544 at 551, *supra.*

7. We note that the Indiana General Assembly raised the interest rates of IC 34–2–22–1, 34–4–16–6, and 34–4–16.5–17 effective January 1, 1982.

aspect of this question which he raises is different from that disposed of there. *Holt* held that the classifications of "(1) governmental tort-feasors, who are entitled to a grace period of 180 days, as opposed to private tort-feasors, who are not; or (2) victims of negligence of governmental entities, who are not entitled to interest if the judgment is paid within 180 days, as opposed to victims of negligence of private parties, who are entitled to interest" are not arbitrary or invidious classifications. *Holt v. City of Bloomington, supra*, at 391 N.E.2d 833. Thompson, on the other hand, argues that there are two other arbitrary and invidious classifications within the judgment creditor classification in the legislation under scrutiny which deny him equal protection of the law: (1) tort judgment creditors of the state as opposed to non-tort judgment creditors of the state and (2) tort judgment creditors of the state who have obtained or will obtain their judgments prior to February 19, 1974, or after March 3, 1980, as opposed to tort judgment creditors of the state who obtained their judgments between February 19, 1974, and March 3, 1980. Thompson states, "Once one becomes a creditor or judgment creditor of the State of Indiana or any other governmental entity the nature of the claim becomes of no importance or significance because only money is then owing or potentially owing from the public funds; this money is owing regardless of whether the original claim was in tort, breach of contract, eminent domain, or any other type of suit or claim. Once a certain sum of money is due or owing to a governmental creditor or governmental judgment creditor then all of the creditors are 'similarly circumstanced' and must be treated alike." (Appellant's Brief at 60–61.)

We have held that statutory classifications are not constitutionally prohibited so long as they are reasonable and not arbitrary. *Kinslow v. Cook*, (1975) 165 Ind.App. 623, 333 N.E.2d 819. We determined in Issue Two that Thompson had no fundamental right to the immediate accrual of interest upon his tort judgment obtained against the state, and Thompson does not aver that the classification of which he is a member is constitutionally suspect.

"Where neither a fundamental right nor a suspect classification is involved, the standard of review is that the classification not be arbitrary or unreasonable and that a 'fair and substantial' relationship exist between the classification and the purpose of the legislation creating it. *Sidle v. Majors, supra.* It is the nature of the individual interests at stake which determines the applicable equal protection test."

*Johnson v. St. Vincent Hospital, Inc., supra*, at 404 N.E.2d 600. Under this standard of scrutiny we have already determined in Issue Two that there is a rational basis to the legislature's attempt to protect the public treasury from unlimited liability in tort. We hold now that the classification of tort judgment creditors of the state as opposed to non-tort judgment creditors of the state to be reasonable classifications when viewed with regard for those same historical and public policy considerations. Several statutory methods have been alluded to in footnote 5 which governmental entities use in order to pay judgment claims entered against them: appropriation of funds for claims which might arise, levy of a tax to pay the judgment after it is obtained, and purchase of insurance to cover potential liability. While it may be possible for governmental entities to appropriate the approximate dollar amount of funds before they become due for payment of their contractual or condemnation debts, such is not the case with respect to tort liability. Aside from limited appropriations or insurance, which every governmental entity may not be authorized or financially able to obtain, one can safely say that a governmental entity does not plan to become indebted for a tort. It does not appear arbitrary or unreasonable, therefore, when providing for interest against a governmental entity for the legislature to provide a longer period of time for that entity to raise funds to cover a tort claim than to cover either a contract or an eminent domain award.

Likewise, it does not appear to us arbitrary or unreasonable for the legislature to distinguish governmental tort judgment creditors who recovered their judgments between February 19, 1974, and March 3, 1980, from those who recovered judgments thereafter. It would appear from the 1980 legislation concerning retroactivity that the legislature, while realizing that it could not limit the government's liability for damages in causes which arose prior to February 19, 1974, could attempt to limit its ultimate monetary responsibility by precluding accrual of interest during appeal. Thus, the denial of interest to tort judgment creditors of governmental entities during an appeal was a reasonable method of holding down overall liability in the face of essentially limitless awards while at the same time affording some protection of such award from unfair erosion by inflation which might be caused by an unreasonable delay in payment after the government's liability had finally and irrevocably been established. It is reasonable to assume, as the legislature apparently did, that few tort judgments obtained against governmental entities after March 3, 1980, would have been based on causes of action which arose prior to February 19, 1974; therefore, it decided to provide interest from the date of settlement or judgment even if an appeal were taken where the limits of liability were set at only $300,000 per person. If whether or not to award post-judgment interest is related to the overall concept of damages as they attempt to afford full and just compensation, then we should not fail to note that Thompson was able to recover a much larger award initially than other tort claimants who, though they were entitled to interest from the date of judgment regardless of an appeal, were limited initially to a $300,000 recovery for possibly even greater injuries than Thompson suffered. The classification of which Thompson complains is not, in the final analysis, any more

fundamentally disadvantaged by the legislation than are the members of the class whose position he covets.

Frankly, we sympathize with Thompson's disappointment over the loss of potential interest earnings on $1.24 million for more than three years pending the state's appeal. We judicially note the rising interest rates during 1976–1979, but note also an even more rapid rise in rates since that time. Nevertheless, we also note that none of the statutory interest rates cited by either Thompson or the state provide for the compounding of interest[8] or even the rate of interest at which a judgment creditor could earn in the current money market. This is true even though beginning in 1982 those statutory rates will rise to ten and twelve percent. Clearly the legislative intent in setting interest rates is not to match the investment potential of the private sector. Yet, this fact has never been considered fundamentally unfair.

While it may appear to all judgment creditors of governmental entities that they are similarly situated and should be treated in exactly the same manner, it is clear from the equally valid position of public policy considerations that separate classifications of judgment creditors of the government have rational and justifiable bases. We hold that a fair and substantial relationship exists between the classifications posited above and the purpose of the legislation, and we conclude, therefore, that Ind.Code 34–4–16.5–17 does not offend the equal protection standards imposed by either our federal or state constitutions.

*Issue Four—Privileges and Immunities; Special Law*

■ Thompson states: "The 'fair and substantial relation standard' [set out in *Johnson v. St. Vincent Hospital, Inc., supra*], is to be applied in an examination under both Article I, § 23[9] ('privileges and

---

8. Courts have traditionally been hostile to the idea of compound interest on damages. *See Indiana Telephone Corp. v. Indiana Bell Telephone Co.*, (1976) 171 Ind.App. 616, 360 N.E.2d 610; McCormick, *Damages* § 53 (1935).

9. "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

immunities') and Article IV, §§ 22 [10]–23 [11] ('no local or special laws') of the Indiana Constitution." (Appellant's Brief at 67.) We concur. Having decided that there is a fair and substantial relationship between the objective of the legislation and the classifications chosen by the legislature to effect that purpose, we find this issue to have been subsumed by the discussions in Issues Two and Three. Thus, we find no violations of either Article I, § 23 or Article IV, §§ 22–23 of the Indiana Constitution.

Judgment affirmed.

NEAL, P. J., concurs.

ROBERTSON, J., dissents with opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent from the conclusion and result of the majority opinion. The fundamental issue is whether Thompson was denied due process by the State's use of his property without just compensation, an act plainly and expressly forbidden by both the state and federal constitutions. Thompson, in my opinion, makes a more than adequate case for redress of his loss of interest. Using the logic of *Schnull v. Indianapolis Union R. Co.*, (1921) 190 Ind. 572, 131 N.E. 51, Thompson can legally, and should morally, be compensated for the State's use of his money.

I would reverse the trial court.

---

**10.** "The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say: ... (15) In relation to interest on money; ..."

**11.** "In all cases enumerated in the preceding Section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."