Nina Lynn HOLLIS b/n/f Richard H. Wild, and Phyllis J. Wild, Plaintiff-Appellant,

v.

STATE of Indiana, Defendant-Appellee.

No. 2–384A87.

Court of Appeals of Indiana, Second District.

Sept. 17, 1984.

Rehearing Denied Oct. 24, 1984.

David Paul Allen, Hammond, for plaintiff-appellant.

Linley E. Pearson, Atty. Gen., Thomas R. Hamill, Deputy Atty. Gen., Indianapolis, for defendant-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Nina Lynn Hollis (Nina), a minor child, and her legal custodians, the Wilds, appeal the denial by the Full Industrial Board of their application for financial assistance pursuant to IND.CODE 16–7–3.6–1 *et seq.*, the Indiana Compensation for Victims of Violent Crimes Act (Violent Crimes Compensation Act).

We affirm.

## STATEMENT OF THE FACTS

Debra Hollis, Nina's mother, was strangled and stabbed to death on February 27th, 1982 by her estranged husband, David Hollis. David not only murdered Debra but also a neighbor and her two-year old son who were found in the same apartment that Debra and her daughter shared with another woman. Nina, a little over two years old at the time, was present at the scene of the murder but was not physically harmed. David was Nina's father; Debra had separated from David in November, 1981 and filed for divorce in January, 1982.

In April, 1982 Nina filed an application for assistance under the Violent Crimes Compensation Act as the dependent child of her murdered mother. The Violent Crimes Compensation Division denied her application. There followed a hearing before a single member of the Industrial Board (Violent Crimes Compensation is a division of the Industrial Board); the hearing officer denied Nina's claim on the basis of the family exclusion clause of IND.

CODE 16–7–3.6–5(b), which disallows assistance to Nina because of her familial relationship with the offender, her father. The matter was then appealed to the Full Industrial Board, and the Board affirmed the award of the single hearing member. Nina's appeals their affirmation of the denial of her claim.

## STATEMENT OF THE ISSUES

Nina raises three issues on appeal, which we have consolidated into one:

Whether the family exclusion clause of IND.CODE 16–7–3.6–5(b) is violative of the claimant's 14th Amendment right to equal protection.

## DISCUSSION AND DECISION

The statute which is the subject of this appeal, IND.CODE 16–7–3.6–5, states in relevant part:

"Persons eligible for assistance; restrictions; funeral expenses

Sec. 5. (a) Except as provided in subsections (b) and (c), the following persons shall be eligible for assistance under this chapter:

(1) A victim of a violent crime.

(2) A surviving spouse or dependent child of a victim of a violent crime who dies as a result of that crime.

\* \* \* \* \* \*

(b) A person who commits a violent crime upon which an application is based, or an accomplice of that person or a member of the family of that person, is not eligible for assistance under this chapter. However, if the victim is a legal nonspousal dependent of the person who commits a violent crime, compensation may be awarded where justice requires."

Nina is not a "victim", for IND.CODE 16–7–3.6–1(e) defines "victim" as an individual who suffers bodily injury or death as a result of a violent crime. She is therefore a "claimant", which, in this case, means a legal dependent of a victim filing

an application for assistance under this chapter. IND.CODE 16-7-3.6-1(c).

The Hearing Examiner applied 16-7-3.6-5(b) to Nina and declared her ineligible for assistance because she is a "member of the family" of the offender, her father. Further, even though the mother, Debra, *is* a victim, she cannot recover under the Act because she was a "spousal dependent". Nina's derivative claim, based on her mother's victim status, is then also barred. The appellant explicitly concedes that the Hearing Examiner correctly applied the statute as to her situation; Nina questions the "rationality" of the family exclusionary clause itself.

As noted by Judge Hoffman, in *Cole v. Indiana*, (1983) Ind.App., 454 N.E.2d 889, the Violent Crimes Compensation Act was enacted to compensate victims who generally would be unable to seek compensation because the offender is probably judgment proof. *Cole, supra*, at 890. "However, the purpose of subsection (b) of the act excluding family members of the perpetrator from recovering is aimed at preventing collusive arrangements among family members" and more specifically intended to exclude spousal abuse from the sphere of recovery. *Id.*

Nina's argument consists of various hypothetical situations which, when compared with Nina's own tragic situation, reflect the absurd results occasionally rendered by application of the family exclusionary clause. For instance, Nina points out that had the other adult murder victim's son lived (he too was murdered) and had been physically unharmed by David, he would have qualified for benefits, while Nina, "by reason of her heredity", would not.

Nina refers to an Indiana Law Review article which discusses in detail the Indiana statute as well as similar statutes in other states. Clark & Webster, "Indiana's Victim Compensation Act: A Comparative Perspective", 14 Indiana L.Rev. 751 (1981). The article criticizes the general family member exclusion because it denies benefits to those persons within the ambit of the victim compensation concept. Clark & Webster, *supra*, at 760. The authors go on to suggest that "Indiana policy makers should consider a broader eligibility standard similar to the Minnesota standard which not only covers the legal nonspousal dependent but also any related party when the interests of judgment require compensation. This broad standard is the fairest policy because justice may require that the spouse or relative of the criminal offender receive benefits in exceptional cases". *Id.* at 761.

While we agree with appellant that the exclusionary clause compels a harsh and unjust result in Nina's case, this court is simply not imbued with the requisite power to alter that result through statutory revision. *Beecher v. White*, (1983) Ind.App., 447 N.E.2d 622.

Appellant begins her equal protection argument by conceding that she is neither a member of a suspect class nor has she been deprived of a fundamental right; therefore, this court does not subject the Violent Crimes Compensation Act to strict scrutiny in our constitutional analysis. Instead, we employ a lesser standard, which states that the legislation in question not be unreasonable, arbitrary, or capricious and the requirements therein must bear a rational relationship to the purpose of the Act. *Thompson v. State*, (1981) Ind.App., 425 N.E.2d 167, appeal dismissed, 459 U.S. 801, 103 S.Ct. 23, 74 L.Ed.2d 39 (1982).

The oft-cited standard of review in approaching questions as to the constitutionality of a particular statute is explained by the Indiana Supreme Court in *Sidle v. Majors*, (1976) 264 Ind. 206, 341 N.E.2d 763:

"In approaching a consideration of the constitutionality of a statute, we must at all times exercise self restraint. Otherwise, under the guise of limiting the Legislature to its constitutional bounds, we are likely to exceed our own%(4)27 We, therefore, remind ourselves that in our role as guardian of the constitution, we are nevertheless a court and not a 'supreme legislature.' We have no right to substitute our convictions as to the desir-

ability or wisdom of legislation for those of our elected representatives. We are under a constitutional mandate to limit the General Assembly to its lawful territory of prohibiting legislation which, although enacted under the claim of a valid exercise of the police power, is unreasonable and oppressive. Nevertheless, we recognize that the Legislature is vested with a wide latitude of discretion in determining public policy. Therefore, every statute stands before us clothed with the presumption of constitutionality, and such presumption continues until clearly overcome by a showing to the contrary." *Sidle, supra*, at 766.

The appellant concedes the legitimacy of the state's purpose behind the family exclusion clause, articulated in *Cole*, of avoiding collusive claims and further avoiding the "rewarding" of spousal abuse. *Cole, supra*, at 890. Further, the general purpose of the Violent Crimes Compensation Act is to compensate victims who would not otherwise receive compensation from offenders who are most likely judgment proof. *Id.* Finally, the state has a viable interest in preserving its fiscal integrity. *Thompson, supra*, at 174. Clearly the provisions of the Violent Crimes Compensation Act bear a rational relationship to the furtherance of the above legitimate purposes.

Nina makes a creative attempt to analogize two U.S. Supreme Court opinions dealing with illegitimate children (*Jimenez v. Weinberger*, (1974) 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363; *Mills v. Habluetzel*, (1982) 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770) to the instant case; she argues that these cases stand for the proposition that "it is fundamentally and undeniably unjust to vicariously penalize a child for the sins or carelessness of the parent". Appellant's brief, pg. 19. We do not believe that the comparison between the class of illegitimate children and the class of children whose parent has been murdered by the other parent is applicable, and thus

we decline to adopt the reasoning articulated in *Jimenez* and *Mills*[1] to the present situation.

Finally, Nina asks that we independently re-write the family exclusion clause so that she would be placed in the class of applicants whose claims could be allowed in the interests of justice despite a family link to the offender.

We are sympathetic to Nina's plight, but we are also constrained to reiterate that "we are not engaged in the fabrication or selection of the wisest, or most desirable of a number of possible courses in the common law". *Beecher, supra*, at 627.

For the above reasons, the decision of the Industrial Board is affirmed.

Judgment affirmed.

ROBERTSON and RATLIFF, JJ., concur.

---

**1.** Both cases involved equal protection challenges to statutes which imposed disadvantages on illegitimate children. The Supreme Court struck down the state statutes as unconstitution-

al, finding that neither law was rationally related to the alleged state interests involved. *Jimenez, supra; Mills, supra.*